TILLSON *v.* CONSUMERS POWER CO.

1. ADJOINING LANDOWNERS—COMMON LAW LIABILITY FOR LATERAL SUPPORT.

At common law one engaged in excavating was only required to preserve lateral support for adjacent land in its natural condition unburdened with buildings which increase the hazard.

2. SAME—STATUTES—SUBJACENT SUPPORT.

Statute imposing liability on landowner for subjacent support in addition to that provided at common law should be strictly construed (3 Comp. Laws 1929, § 13500 *et seq.*).

3. SAME—STATUTES—SUBJACENT SUPPORT.

Lot owner, contractor and subcontractor who excavated to 14-foot depth after which cobblestone foundation and wall of building which had stood on adjoining lot for 20 years collapsed *held,* liable under statute imposing liability for damages for deprivation of subjacent and lateral support where all parties knew of unstable character of the soil, testimony amply disclosed such deprivation, although steel piles, planking and tarpaulins were used in efforts to stop flow of sand and water from plaintiff's lot into excavation (3 Comp. Laws 1929, § 13500 *et seq.*).

4. CONSTITUTIONAL LAW—STATUTES—PRESUMPTIONS.

Statutes are presumed to be constitutional.

5. SAME—STATUTES—SUBJACENT SUPPORT—EQUITY.

Failure of statute, requiring owner of land upon which excavations are made to furnish lateral and subjacent support, to expressly include provision for license to go upon land of adjoining owner and protect his building from damage but providing for equitable \jurisdiction with respect to all disputes arising in connection therewith does not render act invalid as contravening due process clause of the State Constitution and equal protection clause of the Federal Constitution (Mich. Const., art. 2, § 16; U. S. Const., 14 Am.; 3 Comp. Laws 1929, §§ 13500–13503).

(53)

6. Adjoining Landowners — Lot Owner — Contractor — Subcontractor.

Lot owner and principal contractor are each liable to adjoining lot owner for resultant damages from loss of lateral and subjacent support if independent subcontractor who did excavating is liable, where construction operations necessitated jeopardizing safety of adjoining lot owner's buildings (3 Comp. Laws 1929, § 13500 *et seq.*).

7. Same — Joint Liability.

Lot owner and principal contractor *held,* jointly liable with subcontractor in suit by adjoining landowner for damages to building resulting from excavation 14-feet deep made under supervision of lot owner's architect and within scope of subcontractor's undertaking as to the construction (3 Comp. Laws 1929, § 13500 *et seq.*).

8. Damages — Measure — Market Value — Reparation.

If injury to property caused by negligence is permanent or irreparable, measure of damages is difference in its market value before and after said injury, but if injury is reparable and expense of making repairs is less than value of property, measure of damages is cost of making repairs.

9. Same — Reduction of Judgment — Reparations — Net Rentals — Improvement.

Judgment of $22,800 for damages to building on lot adjoining defendants' excavation, erroneously measured by difference in market value before and after injury, is reduced to $16,000 with five per cent. interest from date of injury to entry of judgment, the amount of damages as measured by cost of feasible reparation and including loss of net rentals but making no allowance for improvement in plaintiff's building through use of new materials (3 Comp. Laws 1929, § 13500 *et seq.*).

10. Costs — Failure to Sustain Respective Contentions.

No costs are allowed either party in Supreme Court where both appealed but neither has fully sustained contentions made.

Appeal from Oakland; Brown (William E.), J., presiding. Submitted April 20, 1934. (Docket No. 23, Calendar No. 37,682.) Decided October 23, 1934. Rehearing denied December 11, 1934.

Action by John Arthur Tillson against Consumers Power Company, a Maine corporation, Consumers Power Company, Pryale Construction Company, and Bartling & Dull, Michigan corporations, for loss of lateral and subjacent support.  Judgment for plaintiff. All parties appeal.  Modified and affirmed.

*John Arthur Tillson* and *Goodloe H. Rogers,* for plaintiff.

*Walter D. Kline* and *N. B. Kelly,* for defendant Consumers Power Co.

*Pelton & McGee,* for defendant Pryale Construction Co.

*Andrew L. Moore,* for defendant Bartling & Dull.

NORTH, J.  Plaintiff owns lots 114 and 115 of the original plat of the city of Pontiac.  There was located on these lots a three-story building constructed of bricks and cement blocks.  The property fronted to the west on Wayne street and extended back to an alley on the easterly side.  The adjacent property on the southerly side was owned by the Consumers Power Company.  The line between these two properties was four to six inches south of the south wall of plaintiff's building.  In May, 1930, the Consumers Power Company entered into a contract with defendant Pryale Construction Company for the erection of an office and mercantile building on the power company's site according to prepared plans and specifications.  These plans specified an excavation to a depth of 14 feet below the established grade; and the excavation covered the front or westerly 100 feet of the power company's lot and extended south from plaintiff's build-

ing 60 feet or thereabouts. Plaintiff alleged that in this excavating, which was done under a subcontract by defendant Bartling & Dull Company, the southerly wall of his building was undermined, that in consequence thereof the wall collapsed and his land and building were thereby greatly damaged. In this tort action plaintiff seeks to recover from defendants the damage he has sustained. He asserts a right of recovery both by reason of defendants' common-law liability arising from alleged negligence and under the statutory liability imposed by Act No. 314, Pub. Acts 1921, being 3 Comp. Laws 1929, § 13500 *et seq.* In substance plaintiff alleges a duty on the part of defendant to use reasonable precaution (1) to prevent the soil from plaintiff's said lot 114 from falling into said excavation; (2) to prevent injury and damage to plaintiff's said land and building thereon; (3) to protect the soil on plaintiff's said lot 114 and to preserve it in its natural state; and (4) under Act No. 314, Pub. Acts 1921, to furnish sufficient lateral and subjacent support to plaintiff's building, to protect the land and all structures thereon from injury due to or incident to excavating or to the disturbance of other existing conditions caused by such excavation. Plaintiff claims that defendants' failure to discharge the duties above enumerated caused the damage to his property for which he seeks recovery.

In their defense, defendants assert unconstitutionality of the statute above cited and deny its application to the facts in this case; they deny that any of defendants were guilty of negligence which was the proximate cause of plaintiff's damage; they assert that an incorrect rule of damage was applied and that the damages awarded were excessive. And further defendant Consumers Power Company de-

nies liability on the ground that the excavation was done through an independent contractor and that this contractor or his subcontractor went outside the scope of the contract in trespassing upon plaintiff's lot while erecting underpinning beneath plaintiff's wall. In the circuit court the case was tried without a jury. Plaintiff had judgment for $22,800. Defendants' appeal presents the questions above noted. Plaintiff in a cross-appeal asserts that the judgment for damages is inadequate.

It is of first importance to determine whether the statute applies to the facts presented in this case and, if so, whether the law is constitutional. At common law one engaged in excavating was only required to preserve lateral support for the adjacent land in its natural condition, unburdened with buildings which increase the hazard. *Gildersleeve* v. *Hammond,* 109 Mich. 431 (33 L. R. A. 46). The statute imposes duties unknown to the common law. We quote the material portions of Act No. 314, Pub. Acts 1921 (3 Comp. Laws 1929, § 13500 *et seq.*):

"Section 1. It shall be the duty of every person, partnership or corporation who excavate upon land owned or occupied by them to a depth exceeding twelve feet below the established grade of a street or highway upon which such land abuts or, if there be no such established grade, below the surface of the adjoining land, to furnish sufficient lateral and subjacent support of the adjoining land to protect said land and all structures thereon from injury due to the removed material in its natural state, or due to the disturbance of other existing conditions caused by such excavation.

"Sec. 2. Such owner or occupant shall be liable to the proper person entitled to sue therefor, for the actual damage to land and structures and any other

resulting damages, arising from failure to fulfill the duty created by this act. * * *

"SEC. 4. The remedies herein provided and the duty herein created are in addition to the duty and remedies existing at common law."

Defendants' contention that the statute is not here applicable involves the following facts: The actual excavating (with the exception of elevator pits) and such underpinning as had been thought sufficient were completed July 16th, possibly as early as July 12th. Plaintiff's wall did not fall until July 31st. While excavating for the underpinning water was struck in a strata of gravel. It flowed or seeped from plaintiff's land onto the Consumers Power Company's property to such an extent as to prevent or seriously interfere with construction operations. It was necessary to check this flow or seepage of water. This seems to have presented a serious and rather difficult problem, and necessitated pumping the water from the excavation. The subcontractor, incident to an attempt to check the water, resorted to driving steel piles. This sheet piling was ordered by engineers who represented the Consumers Power Company. The piles were driven through the strata of gravel down to the clay, a depth of 16 or 18 feet. About 25 feet of the piling parallel to and adjacent to plaintiff's wall had been driven when the wall fell. While driving these piles at a point towards the easterly end of the wall sand or soil began to run out from under plaintiff's building. In an effort to stop this the workmen used canvas or tarpaulin in connection with planking. This point was somewhat distant from where the collapse of the wall occurred, but it revealed the unstable character of the soil. All parties concerned had full knowledge that the foundation under the

east 80 feet of plaintiff's wall was of cobblestone and did not extend to a great depth below the surface of the soil. There is conflict of testimony as to the amount of jar or vibration that resulted from the pile driving; but the collapse of plaintiff's wall followed the third day after the pile driving began. The central portion, something like 50 feet in length, of plaintiff's south wall fell, letting floors down, injuring plumbing and electric wiring, and causing a settling and cracking of the southerly portion of the front wall of plaintiff's building; and other damage to the building which need not be here detailed. As stated in the Consumers Power Company brief, the claim that the statute does not apply in this case is as follows:

"Under this testimony it cannot be said that the injury was due to the excavation or to any disturbance of conditions caused by the excavation. The excavation was at most a condition, not a cause. The water was below the excavation and came out in digging under Tillson's wall, not in digging this excavation on the property of Consumers Power Company. Any injury due to pumping the water was not due to excavation, or at least the excavation on defendant's property. We suppose it was pumped so the contractor could work under plaintiff's wall. The pile driving mentioned was no part of the excavation. The piles were driven in order to keep out the water discovered under plaintiff's wall. If the collapse was due to lack of foundation (under plaintiff's wall) for an underpinning wall, the collapse cannot be said to be due to the excavation."

Notwithstanding the statute is in derogation of the common law and should receive a strict construction (*Aristos* v. *Detroit & Canada Tunnel Co.,* 258 Mich. 579), defendants' contention cannot be

sustained. Everything done by the subcontractor was germane to and necessitated by the excavation for the Consumers Power Company's building. Whether the collapse of plaintiff's wall, in the words of the statute, "was due to the removed material in its natural state, or due to the disturbance of other existing conditions caused by such excavation," the statutory liability resulted. The testimony disclosing that work incident to this excavation deprived plaintiff's property of its lateral support is ample. There is no dispute that water, sand and other soil came out from under plaintiff's wall and upon the land of the Consumers Power Company while its work incident to excavating was going on. That this change of the natural state of the subjacent and lateral support of plaintiff's building was serious and produced precarious conditions is quite conclusively evidenced by the efforts made by the subcontractor to check and prevent its continuance. Driving of the steel piles was part of this operation, and there is testimony disclosing that this had to do with "the disturbance of * * * conditions." Plaintiff's building had stood on its cobblestone foundation for approximately 20 years, and beyond doubt would have so continued had it not been for defendant's excavation of the adjacent land. The statutory provisions are here applicable.

*Constitutionality.* The trial judge determined liability upon the common-law ground of actionable negligence. He did not pass upon the constitutionality of the statute. In urging unconstitutionality, defendants assert the statute deprives them of property without due process of law in violation of article 2, § 16, Michigan Constitution, and that they are denied equal protection of the law in violation of the fourteenth amendment to the Federal Constitution.

It is presumed that the statute is constitutional. *Sears* v. *Cottrell,* 5 Mich. 251; *Bowman* v. *Wayne Circuit Judge,* 214 Mich. 518, 528. The gist of defendants' claim of unconstitutionality is that since the statute contains no provision entitling them to go upon plaintiff's property and do such things as might be necessary to prevent damage to his property while putting in foundations or doing other construction work incident to erecting the building on the adjacent site, the owner of this adjacent property is either deprived of the right to utilize his land by the erection of a building thereon or is subjected to liability for damage occurring to plaintiff's building without any right on the part of defendants to do the things necessary to prevent such damage. In other words the Consumers Power Company is either deprived of the lawful enjoyment of its adjacent property or subjected to the payment of damages for doing injury to plaintiff's building which it has no right or power to obviate. In this connection the Consumers Power Company's brief points out that similar statutes or ordinances in New York, New Jersey and Connecticut impose liability upon the party who is excavating only on condition that upon application he is given license to go upon the adjoining land and perform such acts as are reasonably necessary for the protection of the adjacent property. Decision in *Young* v. *Mall Investment Co.,* 172 Minn. 428 (215 N. W. 840, 55 A. L. R. 461), is cited and stressed. It was therein held that the general laws of the State of Minnesota imposed upon one engaged in excavating only the common-law liability towards the adjacent owner; and that since the city ordinance was not one within its police power to enact, and also since city charters and ordinances must be ''consistent with and sub-

ject to the laws of the State,'' the ordinance was invalid. The instant case has no such legal aspect.

We do not think the mere omitting from the Michigan statute provision for license to go upon the land of the adjoining owner for the purposes of operations looking to protection renders the act invalid. It would seem that the Michigan statute, in lieu of provision for license to go upon adjoining land, has made ample provision for the exercise and enjoyment of the rights of the respective parties in section three of the act, not hereinbefore quoted. It reads:

"The owner or occupants of adjoining lots or structures shall also be entitled to relief in a court of equity by way of injunction or other appropriate equitable relief, * * * Such court of equity shall have jurisdiction in such proceedings arising in connection with the subject matter thereof."

Seemingly the equity court is vested with plenary powers incident to the provisions of this statute. Therefore it would seem that in an appropriate case the builder might properly appeal to the equity court for a mandatory injunction by which he would be enabled to go upon the land of the adjacent owner and do such things as were necessary to obviate damage to his property. In the event of the refusal of the adjacent owner to permit access to his property, the alternative might be assumption by him of the risk of damage to his own property by the building operations of his neighbor carried on in a reasonable way. In any event under the provisions of this statute vesting the equity court with full jurisdiction over the rights of the respective parties, each is provided with his day in court, neither is deprived of his property without due process of law, and each is given equal protection of the law. As

against the objections here urged the act is constitutional.

Since we find the statute constitutional and also find it is applicable to the instant case, we need not review the finding of the trial judge that there was negligence on the part of defendants which would have rendered them liable at common law. Instead it is sufficient that we find the excavation by defendants was the proximate cause of the collapse of plaintiff's wall and for the resultant damages there is liability under the statute.

Was the owner exempt from liability by reason of the excavating having been done by the Bartling & Dull Company as an independent subcontractor? That the excavation specified for the Consumers Power Company's building necessitated operations which seriously jeopardized the safety of plaintiff's building is too clear for argument. The foundation under plaintiff's south wall was known to be of cobblestone construction and not of great depth below the surface. Before work was started borings had disclosed the nature of the soil; and as the work progressed other borings were taken and the extra hazardous condition became fully apparent. There was an obvious danger of an unusual character. Under our decisions each of the defendants is liable for the resultant damage to plaintiff's property, if the subcontractor is liable. *Watkins* v. *Gabriel Steel Co.*, 260 Mich. 692, and 268 Mich. 264.

See, also, *Pickett* v. *Waldorf System, Inc.* (241 Mass. 569 [136 N. E. 64]), 23 A. L. R. 1014 and note section 10, p. 1033, as to liability of owner for impairment of lateral or subjacent support by act of his contractor.

Defendants other than Bartling & Dull Company cannot escape liability on the theory that the latter

in operating on plaintiff's property or in permitting soil and water to escape from plaintiff's property became a trespasser and that his doings in these particulars were not within the scope of his contract. The record discloses that the subcontractor did nothing more or different than was clearly within the scope of executing his part of the construction of the Consumers Power Company's building. Further, under the terms of the building contract, the architect employed by the Consumers Power Company had the power of general supervision "for the purpose of assuring the owner that the plans and specifications are being properly executed." Also the contractor was required to "arrange the operations of his workmen in accordance with the governing laws, ordinances and permits, *and the directions of the architect.*" Another provision reads: "The architect shall furnish with reasonable promptness, additional instructions, by means of drawings or otherwise, necessary for the proper execution of the work. * * * The work shall be executed in conformity therewith *and the contractor shall do no work without proper drawings and instructions.*" There are other contract provisions of like purport, showing right of supervision by the owner through its architect. The record does not disclose such a departure from the proper execution of the subcontractor's undertaking as relieves either of the other defendants of joint liability.

*Damages.* Both plaintiff and defendants have appealed from the award of damages made by the trial court. Plaintiff contends the amount is inadequate, does not constitute just compensation, and is not in accordance with the preponderance of evidence. On the other hand defendants assert that the damages adjudged are excessive in amount and that the trial

court did not use the correct rule of damages in arriving at the amount of the judgment.

The rule applied in the circuit court was that plaintiff's damages should be measured by determining the difference in value of his property immediately before the collapse of the wall and immediately thereafter. Defendants assert that under the circumstances involved in this case the correct measure of plaintiff's damages is the reasonable cost of repair with some deduction for depreciation in value of the building prior to the accident, which depreciation resulted from age, use, and the fact that second-hand materials were used in its construction. In other words defendants are urging that plaintiff's building when repaired will be more valuable than before the accident. Our decision in *O'Donnell* v. *Oliver Iron Mining Co.*, 262 Mich. 470, was rendered shortly prior to decision of the instant case in the circuit court and, as appears from the briefs, was not called to the attention of the circuit judge. The proper rule of damages is stated in the *O'Donnell Case.* The syllabus reads:

"If injury to property caused by negligence is permanent or irreparable, measure of damages is difference in its market value before and after said injury, but if injury is reparable, and expense of making repairs is less than value of property, measure of damages is cost of making repairs."

In *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo, Ohio,* 126 Ohio St. 140, 150 (184 N. E. 512) the rule is stated thus:

"It is difficult to state a rule for measuring damages equally applicable in all cases involving either the total or partial destruction of a building by a fire negligently caused. As urged by counsel for

plaintiff in error on oral argument at rehearing, fundamentally it is the purpose of the law to afford to the person damaged *compensation for the loss sustained.* In a case involving the destruction of a building by fire negligently caused, where restoration is impracticable, the measure of damages is the difference between the reasonable value immediately before the damage and the reasonable value immediately afterwards. * * *

"In cases in which restoration of the building damaged can be made, the measure of damages is the reasonable cost of restoration or repairs."

Plaintiff's claim that the measure of damages here applicable is the difference in the market value of the property immediately before and its market value immediately after the wall collapsed is not tenable. There can be no question but that the damage done to plaintiff's property is such as can be repaired. The damage was almost wholly confined to the southerly third of the building, and this southerly portion on the ground floor was used as a separate unit. Therefore damages should not be computed under a rule applicable to a case of irreparable injury, especially if by so doing the amount of damages is increased. We are constrained to hold that an incorrect rule of computing damages was adopted in the circuit court.

It becomes necessary to determine whether under the testimony in the instant case the method of measuring damages adopted by the trial judge resulted in an adjudication of excessive damages. The record contains a great deal of testimony on the damage phase of the case. This testimony was offered on different theories of determining the amount of damage. It covered a wide range and is irreconcilably conflicting. Our review of this testimony leads us to the conclusion that in the manner

above indicated the trial judge rendered a judgment which was excessive in amount.

At the time of trial the building had not been repaired. The testimony as to estimated cost of fully repairing the building, as given by various witnesses, is as follows: $10,006, $23,003.94, and $35,450. The last amount noted included reconstruction of the westerly wall of plaintiff's building, but the trial court properly found that aside from damage to the extreme southerly end of the west wall this item was improperly included. Other witnesses fixed the cost of restoration, exclusive of repairing electrical equipment, plumbing and heating, at $9,495.30, $10,874.91, and $19,846. There is testimony that the cost of repairing electrical equipment would be something in excess of $800, and repairing plumbing and heating equipment something in excess of $1,200. If damages are to be computed on the theory of restoration, loss of net rentals during the period of repair is also an item of damage to which plaintiff would be entitled. The trial judge determined loss of net rentals as being in the amount of $1,000, and we think there is no justification under the record for questioning this item.

To do exact justice in a case of this character wherein testimony is at wide variance is an obvious impossibility. Of necessity, at least in all probability, the damages adjudicated will either be more or be less than plaintiff's actual damages. Compensation should be sufficient to cover the loss sustained. Careful review of the testimony bearing upon damages brings the conclusion that $16,000 will fairly cover the cost of repair or restoration of plaintiff's building and the loss of rentals. Plaintiff should have interest on this amount at the rate of five per cent. per annum from July 31, 1930, to the date of

entering judgment. We are not impressed with defendants' claim that because of the use of new materials plaintiff's repaired building will be more valuable, at least in a material amount, than it was prior to the collapse of the wall and therefore he should not be allowed full cost of restoration.

Neither plaintiff nor defendants have fully sustained the contentions made by them respectively on this appeal; therefore neither will have costs in this court. The case is remanded to the circuit court where the judgment heretofore entered will be vacated and one entered in accordance herewith; such judgment to be against the respective defendants jointly and severally and against the surety on the appeal bond filed herein.

NELSON SHARPE, C. J., and POTTER, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.