## PAPPAS *v.* PARSONS.

1. NEGLIGENCE—INSULATING CONTRACTORS—PLEADING—EVIDENCE—PROXIMATE CAUSE.

In action for fire damage to two-story building against defendants who had contracted to insulate one end and the second floor ceiling with rock wool, it was necessary to allege and prove actionable negligence on the part of defendants and that such negligence was the proximate cause of the fire.

2. SAME—PRESUMPTIONS.

Negligence cannot be presumed.

3. SAME—ACCIDENT—INFERENCES.

While accident alone is not evidence of negligence, accident itself together with surrounding circumstances and legitimate inferences may establish negligence.

4. SAME—FIRE—INSULATING CONTRACTORS—QUESTION OF FACT—EVIDENCE.

In nonjury action by insured's assignees for fire damage to two-story store and apartment building against defendants who had contracted to, and did, insulate one end and the second floor ceiling with rock wool, evidence presented a question of fact as to whether or not defendants were negligent, supported trial court's finding of fact to effect that plaintiffs had not established negligence on part of defendants, and did not preponderate in favor of plaintiffs.

5. APPEAL AND ERROR—NONJURY CASE—QUESTION OF FACT—EVIDENCE.

On appeal in a nonjury case the Supreme Court does not reverse finding of fact by the trial court unless the evidence clearly preponderates in the opposite direction.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted October 11, 1946. (Docket No. 72, Calendar No. 43,451.) Decided January 6, 1947.

Case by Athos Pappas and others against DeWitt C. Parsons and others for damages resulting from fire alleged to have been caused by defendants' negligence. Judgment for defendants. Plaintiff insurance companies appeal. Affirmed.

*Charles H. Burnham,* for plaintiffs.

*Allen & North,* for defendants.

Sharpe, J. This is an action brought by Athos Pappas and Maye I. Pappas, the American Equitable Assurance Company of New York, Millers National Insurance Company of Illinois, Monarch Fire Insurance Company of Ohio, Northwestern National Insurance Company of Wisconsin, and Ohio Farmers Insurance Company, assignees of Maye I. Pappas, as plaintiffs, against DeWitt C. Parsons, Floyd W. Parsons and Harold Holmberg, individually and as a copartnership doing business as Parsons & Holmberg Heating & Air Conditioning Company, as defendants, to recover damages caused by a fire to property owned by Maye I. Pappas.

On August 10, 1943, plaintiff Maye I. Pappas was the owner of a two-story frame store building located on the shore of Graham lake. The store building was 30 by 60 feet. The lower floor of the building was occupied by Athos Pappas in conducting a grocery store and meat market. The upstairs was divided into 4 three-room furnished apartments with a hall running down the center.

A few days prior to August 10, 1943, Maye I. Pappas entered into a contract with Parsons & Holmberg Heating & Air Conditioning Company to insulate the front or west end of the building and the second floor ceiling with granulated rock wool. On August 9, 1943, defendants moved their insulat-

ing equipment, consisting of an enclosed trailer with a one-cylinder gasoline engine, shredder and blower, together with hose and nozzle, onto plaintiff's property. The hose is about 3 inches in diameter and made of fabric, rubber, and spiral wire. It attaches to the blower and runs from there to the place of insulation. It is made in 25-foot sections and blows insulation approximately three feet. There is a flexible metal nozzle some 6 or 7 feet in length which is fitted to the end of the hose. The building to be insulated had a flat roof running from west to east. It was a built-up roof consisting of roofing paper and tar composition. The roof at the west or front end of the building was about 3½ to 4 feet above the ceiling of the second floor and ran back to the east end of the building where the space between the roof and ceiling of the second floor was about 4 inches.

On August 9th, defendant Holmberg and an employee who operates the blower proceeded to cut two ventilator holes about 12 by 18 inches in the front half of the building, one on the north side and one on the south side of the building. They then insulated the west wall and the front half of the ceiling with about 4 inches of rock wool.

On August 10th, defendant Holmberg and two employees began work about 9 a.m. One employee crawled into the attic through a hatch in the roof and proceeded to blow the insulation to a distance of about 10 or 11 feet from the rear or east end of the building. They then moved their trailer to the rear of the building and set up a ladder to the north of the rear door, removed the finishing boards between each rafter and proceeded to insulate the rear 10 or 11 feet by inserting the nozzle on the end of the hose into openings made for such purpose. The work was finished about 4:30 p.m. They re-

turned to Battle Creek and arrived there about
5 p.m. About 5:30 p.m., a Mrs. Etha A. Smith, who
lives in one of the cottages in the rear of the store
building, smelled smoke and ran into the store and
informed Mr. Pappas. He came out the rear door
and saw smoke coming from the roof. The Battle
Creek fire department was called as well as the
Battle Creek township fire department. Both fire
departments responded to the call. The upper story
of the building was practically burned down. After
the fire, the building was rebuilt at a cost of
$5,443.46. The loss was pro-rated and paid by the
insurance companies carrying the risk which com-
panies took assignments from plaintiff Maye I.
Pappas and were subrogated to her rights for dam-
ages.

Maye I. Pappas, individually, claims damages for
loss of trees destroyed by fire, for loss of furnish-
ings and equipment, and loss of rents from apart-
ments while rebuilding. Plaintiff Athos Pappas
claims damages to his store fixtures, stock of goods
and loss of an office desk. It is the claim of plain-
tiffs that the fire could not have started by any
means other than those furnished by the defend-
ants. This claim is based upon evidence that the
attic was clean prior to the insulation; that no live
electric wires were located anywhere in the attic
space of the building; that the fire could not have
started in the second floor of the building as there
was no evidence of flame or smoke in that part of
the building; and that the testimony established
that two of defendants' employees were working in
the east end of the building not more than 50 min-
utes before the fire was discovered; that they were
the last persons at or near that particular place who
could have had an opportunity to cause the fire;
that the nozzle was so hot that it could not be held

without wrapping it in various materials; that a shower of sparks was seen to blow back out of the hole in which the nozzle was inserted; and that these sparks were seen coming out of the building less than one hour from the time the fire was discovered.

Defendants introduced testimony to the effect that there was a fire burning in the coal hot water heater at the rear of the building; that smoke was seen coming from the chimney to which the coal heater was connected; that a tenant family returned to their second floor apartment for a brief time during the afternoon of the fire; that the gasoline motor which powered the blowing rig was so isolated from the rest of the machinery that it could not have contributed to the cause of the fire; that during the afternoon of the fire, defendants were using granulated rock wool as insulation; that an analytical chemist analyzed a sample of the pellet type of rock wool used on the job and found that there was no cotton or wool in it; and that it consisted of mineral fibres made of blast furnace slag or limestone or silicate; that in passing through the hose it would not create friction sparks; that the material could not become heated to such an extent as to start a fire in wood or other materials except very combustible material, such as gas or vapor from oils.

The cause was tried without the aid of a jury. The trial court denied any recovery to plaintiffs and made the following finding of facts:

"The evidence clearly establishes that the material they were using to insulate was rock wool and whether it was granulated or loose fibre type, was not combustible and that the passage of it through the hose would merely create static sparks, if any at all. While the passage of it through the hose might tend to develop a little friction that would

cause the tube to become heated, however, the passage of the air through the hose would tend to cool the same and the friction would not heat the hose or nozzle to such an extent as to make it too hot to hold, or so hot as to start a fire. The evidence further shows that static, or even friction sparks could not have caused a fire in the rock wool and could not have started fire on the wood.

"The fire did not start in that section of the roof at the point where the men were last working, but at a point some 15 feet from the east end of the building and about 1 to 3 feet out from the north side, where they had been working before 10 o'clock that morning. This point was west of the part that they were last filling with rock wool and to the west of the overlay or timber which blocked the flow of rock wool from that end."

In order to recover plaintiffs are required to allege and prove actionable negligence on the part of defendants and that such negligence was the proximate cause of the fire. *Schultz* v. *Sollitt Construction Co.,* 296 Mich. 125. Negligence cannot be presumed. See *Perry* v. *Railroad Co.,* 108 Mich. 130.

In *Durfey* v. *Milligan,* 265 Mich. 97, we said:

"While the accident alone is not evidence of negligence, the accident itself, together with the surrounding circumstances and legitimate inferences, may establish negligence."

Measured by the foregoing principles of law, we are of the opinion that the negligence of defendants becomes an issue of fact. The trial court made a finding of fact to the effect that plaintiffs had not established negligence upon the part of the defendants. We do not reverse unless the evidence clearly preponderates in the opposite direction. See *Leonard* v. *Hey,* 269 Mich. 491 (37 N. C. C. A. 111).

In our opinion the evidence does not preponderate in favor of plaintiffs. The judgment is affirmed, with costs to defendants.       ⬦

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, and DETHMERS, JJ., concurred. NORTH, J., did not sit.