WOLVERINE UPHOLSTERY COMPANY v. AMMERMAN.

AMMERMAN v. WOLVERINE UPHOLSTERY COMPANY.

1. LANDLORD AND TENANT—COVENANT TO REPAIR—DAMAGES FOR BREACH.

The measure of damages to which a tenant is entitled for permanent injuries caused to his goods due to breach of lessor's covenant to repair, is the difference between the market value of the goods immediately preceding the injury and their market value immediately thereafter.

2. SAME—MEASURE OF DAMAGES.

Tenant's submission of testimony of value of its merchandise before fire and its salvage value after the fire, and seeking of verdict for the difference, after subtracting amount recovered from insurance, in effect asked for the difference between the fair market value of the goods before and after the fire, in accord with the applicable general rule as to damages.

3. APPEAL AND ERROR—SAVING QUESTION FOR REVIEW—OBJECTIONS—INSTRUCTIONS.

Failure of appellant landlord to object to the lack of proof of fair market value of tenant's goods damaged by fire or to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4]  32 Am Jur, Landlord and Tenant § 721.
[3]  5 Am Jur 2d, Appeal and Error §§ 545, 553.
[5-7]  15 Am Jur, Damages §§ 21–23.
[8]  32 Am Jur, Landlord and Tenant §§ 717, 727.
[9]  17 Am Jur 2d, Contracts § 77.
[10-12]  32 Am Jur, Landlord and Tenant § 127.
[13]  38 Am Jur, Negligence § 363.
[14]  20 Am Jur, Evidence § 272.

object to the fact that the testimony as to fair market value of the goods before the fire included lost profits coupled with failure to make specific objections to the instructions given to the jury on such points precluded claim of error on appeal (GCR 1963, 516.2).

4. LANDLORD AND TENANT—BREACH OF COVENANT TO REPAIR—VALUE OF GOODS—DAMAGES.

Evidence of expenses incurred in preparation for sale of tenant's goods, such as printing, mailing, transportation costs, and salaries of employees, incurred before fire that took place 2 days before the scheduled sale, should not have been admitted over landlord's objection in action against landlord for breach of covenant for repair of premises, where to allow recovery would be to allow double compensation therefor, the tenant having made an amount in gross estimate of the market value of its goods before the fire.

5. DAMAGES—CONJECTURE—MATHEMATICAL DEMONSTRATION—INFERENCES.

The fact that damages cannot be founded upon mere speculation and conjectural evidence does not require absolute mathematical demonstration, or prevent the drawing of reasonable inferences from the facts and circumstances put in evidence.

6. SAME—EVIDENCE—PECUNIARY INJURY.

Compensation may be allowed for a pecuniary injury which has resulted from the natural and probable result of a wrong even though the extent of the injury is not capable of precise proof, uncertainty as to the *fact* of legal damages being fatal to recovery, not uncertainty as to the *amount*.

7. SAME—COMPUTATION.

Difficulty of ascertaining damages caused by breach of contract is no reason for their denial if there can be found in the testimony a reasonably certain basis for computing them; computation with mathematical exactness not being required.

8. LANDLORD AND TENANT—BREACH OF COVENANTS—DAMAGES—INSTRUCTIONS.

Consideration by jury of 6 alleged breaches of landlord's covenants of lease of portions of building to tenant who sustained a fire loss allegedly because of such breaches *held*, not error because there were no damage proofs to support 3 of them in view of instruction given that jury should award compensatory damages based on testimony received in evidence and not resting upon any guess or conjecture and substantial proof was presented of the alleged breaches of the lease and resulting inconvenience, loss of time, and other elements of damage.

9. CONTRACTS—AMBIGUITIES—PAROL EVIDENCE.
   Generally, parol evidence is admissible to explain the meaning or determine the construction to be placed upon an ambiguity in a written instrument.

10. LANDLORD AND TENANT—RESOLUTION OF AMBIGUITY.
    Ambiguity in a written lease will be resolved against the person who prepared it.

11. SAME—INTENT.
    What the parties to a lease intend by the language employed therein is a matter of law for the court and not a question for consideration by the jury.

12. SAME—AMBIGUITY—CONSTRUCTION OF LEASE—LOADING DOCKS.
    Jury was properly instructed that if any ambiguity existed in the lease involved in action for damages for breach of covenant therein relative to provision of area on loading dock, it should be construed against the lessor who drew the lease.

13. NEGLIGENCE—REQUEST TO CHARGE—INSTRUCTION—RES IPSA LO-
    QUITUR—EVIDENCE—SAVING QUESTION FOR REVIEW.
    Refusal to give request to charge that negligence appellant landlord attributed to appellee tenant as causing fire for which landlord sought damages could not be proved by fact that an accident alone occurred, but that the accident itself, together with surrounding circumstances and legitimate inferences could establish negligence, held, reversible error, where the request was not covered by the instruction given as to permissible inference of negligence and the omission so to instruct was objected to by the appellant's counsel.

14. SAME—INFERENCES—CIRCUMSTANTIAL EVIDENCE—DIRECT PROOF.
    Negligence may be inferred from circumstantial evidence as well as from direct proof.

15. SAME—COMMENT ON EVIDENCE—OBJECTIONS—FIRE—LANDLORD
    AND TENANT.
    Court's comments on evidence in action by landlord against tenant for damages from fire, caused by negligent use of light bulb, for loss of building that there was no claim made nor proof as to who was the last in the premises before the fire occurred, which comments were not an accurate statement of the testimony, which practically foreclosed the landlord from any chance of recovery, and which deprived him of a fair and impartial trial, and were objected to by appellant, held, reversible error, where the landlord had claimed that employees of the tenant were the last to leave the building and the

testimony established that they were the last known persons in the building prior to the fire.

Appeal from Kent; Hoffius (Stuart), J. Submitted Division 3 April 6, 1965, at Lansing. (Docket Nos. 122, 123.) Decided June 21, 1965. Rehearings denied August 11, 1965. Leave to appeal denied by Supreme Court October 20, 1965.

Declaration by Wolverine Upholstery Company, a Michigan corporation, against Edward H. Ammerman and Evelyn R. Ammerman for breach of a lease, in that defendants failed to repair the leased premises after a fire, failed to build a loading dock, and failed to keep roof in leak-proof condition. Declaration by Edward H. Ammerman and Evelyn R. Ammerman against the Wolverine Upholstery Company for the negligent destruction of a building by fire. Cases consolidated for trial and appeal. Verdict and judgment for Wolverine in both cases. Reversed and remanded for new trial.

*McCobb & Heaney* (*Robert C. C. Heaney* and *Hilary F. Snell,* of counsel), for Wolverine Upholstery Company.

*Warner, Norcross & Judd* (*Charles C. Lindstrom* and *Harold S. Sawyer,* of counsel), for Edward H. Ammerman and Evelyn R. Ammerman.

Burns, J. The above cases were consolidated for trial and are consolidated for this appeal. In this opinion, the appellants, Edward H. Ammerman and Evelyn R. Ammerman, will be referred to as "Ammerman," and the appellee, Wolverine Upholstery Company, will be referred to as "Wolverine."

Ammerman owned two adjoining buildings on Monroe avenue in the city of Grand Rapids. The

main building was a five-story brick building and adjoining it to the north was a four-story frame building. On November 5, 1958, Ammerman leased the second floor of both the brick and the frame buildings to Wolverine for the period covering December 15, 1958 through December 14, 1961. On June 5, 1959, Ammerman leased the third floor of both the brick and frame buildings to Wolverine for the period of July 15, 1959 through December 14, 1961. Both leases provided that the premises were "to be occupied for general offices and manufacturing," and that "lessor agrees to keep the buildings in good order and repair insofar as it affects the leased premises." Wolverine was given the right, in common with the owner and other tenants, to use the shipping room which constituted the first floor of the frame building for shipping and for storing incoming and outgoing shipments. In addition to Wolverine, there were two other tenants in the brick building. De Korne Furniture Company, a retail furniture dealer, leased the fourth floor for storage purposes, and Reynolds Manufacturing Company leased the first floor for manufacturing purposes. De Korne and Reynolds also used the shipping room on the first floor of the frame building.

On Saturday, June 3, 1961, employees of Wolverine were in the building preparing for a warehouse sale on the premises scheduled for Monday, June 5, 1961. A number of Wolverine officers and employees were on the premises involved in said preparations. Mr. Jack Barr, a foreman of Wolverine, and his two teen-age sons worked in the shipping room on the day in question and were the last people disclosed by the testimony to be in the building. Mr. Barr stated that he locked up and left the building at 3:45 p.m., and stated that "as far as I can humanly remember I turned out the light."

Shortly after 6 p.m. on Saturday, June 3, 1961, a fire was discovered in the shipping room by the husband of the secretary-treasurer of Wolverine who had gone to the building with his wife to pick up a chair. The Grand Rapids fire department was thereupon notified, but in spite of their efforts, the second, third, and fourth floors of the frame building and the fifth floor of the brick building were destroyed by fire. The frame building was damaged beyond repair and was subsequently demolished. The brick building required a new roof and substantial repairs to the fifth floor and the elevator. There was water and smoke damage on the other floors of the brick building.

Immediately after the fire, Adrian Meyers, chief of the Grand Rapids fire department, personally inspected the building to determine the cause of the fire. His conclusion, which was undisputed, was that the cause of the fire was a large unguarded light bulb hanging from an extension cord on a hollow beam on the north wall of the shipping room in the frame building, which light bulb had been left burning and had ignited the beam. It is also undisputed that this unguarded light and extension cord had originally been placed in this location by the truck driver of Wolverine Upholstery Company, Mr. Roersma, who testified he had done this at the time Wolverine's lease for the third floor commenced, which was July 15, 1959.

The only person other than the Wolverine employees disclosed by the testimony to be in the building on the day of the fire was George Tyler, the truck driver for De Korne Furniture Company. Mr. Tyler testified that he was in the building for approximately 30 minutes on the day of the fire, and that when he left through the shipping room, Wolverine employees were cleaning this area and the light on the extension cord was then on. He left

the premises at approximately 2:30 p.m. and did not return that day.

Wolverine sued Ammerman for breach of contract claiming that Ammerman failed to repair the sprinkler system when it became inoperative, that Ammerman failed to repair and restore the leased premises to tenantable condition after the fire, that Ammerman failed to build a loading dock for Wolverine, that Ammerman failed to furnish parking spaces for Wolverine, and that Ammerman failed to keep the roof of the buildings in a leak-proof condition.

It was admitted that Wolverine received $53,000 from its insurance company to compensate for damages suffered in this fire. It was also admitted that Wolverine owed Ammerman $1,800 for past due rent at that time. Wolverine claimed damages in the amount of $40,000.

Subsequently, Ammerman filed suit against Wolverine for negligence claiming that it was the negligence of Wolverine's employees which started the fire. They asked damages for the destruction of real and personal property in the amount of $279,000.

The two cases were consolidated for trial. The jury returned a verdict in the first case, Wolverine v. Ammerman, in favor of Wolverine in the amount of $16,800, and allowed a set-off for Ammerman in the amount of $1,800 for rent owing, for a verdict of $15,000. In the second case of Ammerman v. Wolverine, the jury returned a verdict of no cause of action.

Ammerman has appealed in both cases primarily on four issues. One of their claims is that the damages awarded by the jury in the Wolverine case were excessive in view of the evidence presented at trial.

Upon the testimony of Mr. Cornelius, president of Wolverine, the fair market value of the Wolverine merchandise in the building before the fire was

stated to be $80,000. The salvage value of the goods
was $4,000 and $53,068.70 was recovered from the
insurance company. Two alternate theories of dam-
ages were submitted by Wolverine to the jury, both
based upon loss of value in cases where irreparable
damage has been done.

After examination of the record below, this Court
is satisfied that Wolverine's goods were damaged be-
yond repair. So the question before us is whether
the proper measure of damages was applied.

The general rule in cases such as this is that the
measure of damages to which the tenant is entitled,
for permanent injuries caused to his goods due to
breach of lessor's covenant to repair, is the differ-
ence between the market value of the goods imme-
diately preceding the injury and their market value
immediately thereafter. 32 Am Jur, Landlord and
Tenant, § 721 (1959).

As appellant points out, Michigan follows this
rule. 9 MLP, Damages, § 44 (1956); *O'Donnell* v.
*Oliver Iron Mining Co.* (1935), 273 Mich 27; *Tilson*
v. *Consumers' Power Co.* (1934), 269 Mich 53. In
the *Tilson Case,* the Court, quoting with approval
from *Northwestern Ohio Natural Gas Co.* v. *First
Congregational Church* (1933), 126 Ohio 140 (184
NE 512), stated the following:

" 'In a case involving the destruction of a building
by fire negligently caused, where restoration is im-
practicable, the measure of damages is the difference
between the reasonable value immediately before the
damage and the reasonable value immediately after-
wards.' " *Tilson* v. *Consumers' Power Co.* (1934),
269 Mich 53, 66.

In the instant case, Wolverine submitted testimony
of the value of its merchandise before the fire and
its salvage value after the fire, and then sought a

verdict for the difference, after subtracting the amount recovered from the insurance company. This in effect is asking for the difference between the fair market value of the goods before and after the fire, and is in accord with Michigan law stated above. If appellant objected to the lack of proof of the fair market value of the damaged goods or objected to the fact that the testimony as to the fair market value of the goods before the fire included lost profits, these objections should have been made at the trial. But instead appellants' attorney agreed at the trial to have this question go to the jury, in the interest of speeding up the trial.

Further, appellants made no specific objections to the instructions given to the jury on these points, and therefore under GCR 1963, 516.2,[1] he cannot now assign them as errors and appeal thereupon.

In addition, there were proofs admitted showing expenses incurred by Wolverine in preparing for the sale and expenses incurred for cleaning up after the fire. With regard to the expenses incurred in preparation for the sale, which include such items as printing, mailing, transportation costs, and salaries of employees, totaling some $2,900, which items were admitted in evidence over the objections of Ammerman, this Court is of the opinion that these amounts should *not* have been allowed. Since the award of the jury was based on Wolverine's $80,000 estimate of the market value of the goods, Wolverine has been reimbursed for the cost of preparing for the sale, because this expense would have occurred even if there had been no fire and the sale had been

---

[1] "Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." GCR 1963, 516.2.

consummated. To hold otherwise would be to allow double compensation on this item.

The next issue upon which Ammerman bases its appeal concerns whether the court erred in permitting the jury to consider all six breaches alleged when there were no damage proofs to support three of them. It is generally agreed that damages cannot be founded upon mere speculation and conjectural evidence. But this does not require absolute mathematical demonstration, or prevent the drawing of reasonable inferences from the facts and circumstances that have been put in evidence. Therefore compensation may be for a pecuniary injury which has resulted from the natural and probable result of a wrong even though the extent of the injury is not capable of precise proof. 15 Am Jur, Damages, § 356 (1958). It is the uncertainty as to the *fact* of legal damages that is fatal to recovery, but not uncertainty as to the amount.

With regard to the amount of proof necessary in alleging damages, the general rule can be stated as follows:

"There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." 15 Am Jur, Damages, § 23 (1958).

Following this line of thought, Michigan has held that where damages are the natural consequence

of the wrongdoer's act and are such that he might reasonably have anticipated them, they are recoverable provided they are not remote, contingent, or speculative. *Van Keulen & Winchester Lumber Co.* v. *Manistee & N. R. Co.* (1923), 222 Mich 682; *Cassidy* v. *Kraft-Phenix Cheese Corp.* (1938), 285 Mich 426; *Woodyard* v. *Barnett* (1953), 335 Mich 352.

Assuming that damages in a particular case are not speculative, the question arises as to how much proof Michigan law requires in submitting these damages in evidence. In *Skimin* v. *Fuel Gas Co.* (1954), 339 Mich 523, 530, where the award of the trial court was found to be within the range of proofs and not unreasonable in amount, the Court, quoting from a syllabus of *Callender* v. *Myers Regulator Co.* (1930), 250 Mich 298, stated that the:

" 'Difficulty of ascertaining damages caused by breach of contract is no reason for their denial if there can be found in the testimony a reasonably certain basis for computing them; computation with mathematical exactness not being required.' "

See, also, *McCullagh* v. *Goodyear Tire & Rubber Co.* (1955), 342 Mich 244, quoting with approval from *Eastman Kodak Company of New York* v. *Southern Photo Materials Company* (1927), 273 US 359 (47 S Ct 400, 71 L ed 684).

Therefore in examining the opinion of the trial court, we find that it correctly relied upon the law as stated in *Muskegon Agency* v. *General Telephone Company* (1957), 350 Mich 41. In that case, while discussing the question of proof of damages, the Court, quoting with approval from *Allison* v. *Chandler* (1863), 11 Mich 542, stated (pp 50, 51):

"The law does not require impossibilities; and cannot therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree

of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice from the court as the circumstances of the case may require, and as may tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury." *Muskegon Agency* v. *General Telephone Company* (1957), 350 Mich 41, 50, 51.

In the case at bar, the advice which the trial judge gave to the jury in his charge on the question of damages is as follows:

"It will be your duty to award such sum in damages as will fairly and reasonably compensate that person for the damages or injuries which they have suffered or sustained as a result of either the breach of the lease or as a result of the negligence which was the proximate cause of any damages. These damages must be based on testimony in evidence received here in Court, and cannot rest upon any guess or conjecture by you as members of the jury."

We find therefore that the judge's charge to the jury on this point is completely in accord with Michigan law on the subject. Since there was substantial proof of the alleged breaches of lease and resulting inconvenience, loss of time, and other elements of damage, although there was no showing of pecuni-

ary loss with regard to three of the breaches, it is the opinion of this Court that the trial court did not err in permitting the jury to consider all six breaches alleged.

Appellants next contend that the court erred in instructing the jury that in leases, ambiguities are construed against the lessor who drew the lease. Appellants had offered in evidence during the course of the trial certain correspondence between the parties to throw light on the provision in the lease with regard to the loading dock. Such exhibit was denied admission by the trial court on the grounds that any statements therein were merged in the lease.

The judge's charge to the jury on this question was as follows:

"The undisputed proofs in this case show that the lease was prepared by the attorney for Ammerman. I therefore instruct you that as a matter of law that any ambiguity with regard to that loading dock, which has been discussed by both counsel in their arguments, or uncertainty as to the meaning of the language contained in it, must be construed against the Ammermans who caused the instrument to be prepared."

Appellants contend that where ambiguities exist in a written instrument, parol evidence is admissible to explain its meaning or determine the construction to be placed upon it.

While this general statement of the law as such is true, the rule more particularly with regard to leases is that where a lease is susceptible of more than one construction, it will be resolved against the person preparing the lease. In *Lynch* v. *National Acceptance Company of Chicago* (1951), 329 Mich 615, 628, the Court, in discussing the question of ambiguities stated:

"It is further to be noted that because plaintiff drew or caused to be drawn exhibits No 2 and the detachable note attached thereto, that as to ambiguity created by the form and purport of the instruments read together, the ambiguity must be resolved against Lynch who caused the preparation of the instruments, and in favor of Rozner company, and those claiming under the Rozner company."

Further, it is clearly the law in Michigan that when examining the wording of a lease and endeavoring to determine the intention of the parties, what the parties intend by the language employed in the lease is a matter of law for the court and not a question for the consideration of the jury. *Brown* v. *Schiappacasse* (1897), 115 Mich 47.

In the instant case, the section of the lease that is the object of our observation, reads as follows:

"4. Lessor will provide a specific area of not less than 1,000 sq. ft. of space on the loading dock, to be built on the north side of the frame building for the exclusive use of lessee to store incoming and outgoing daily shipments."

Appellants claim that a section of the already existing loading dock was to be partitioned off for the benefit of Wolverine, and appellee claims that according to the lease a loading dock was to be constructed for its use. Since the language of the lease appears to be quite clear, "to be built," and the intention of the parties determinable from such language, the issue is a matter of law for the court. We find that the trial court correctly instructed the jury that if any ambiguity existed in this lease, it should be construed against the party who drew the lease, namely the lessor.

The fourth error alleged by appellants concerns instructions given by the court on the question of negligence. Appellants requested in writing the fol-

lowing instruction which was refused by the trial
court:

"Instruction No. 5: With reference to the negli-
gence action brought by Ammerman against Wol-
verine, No. 48,034, you must first determine whether
Wolverine's negligence caused the fire on June 3,
1961. In this regard, I instruct you that while an
accident alone is not evidence of negligence, the
accident itself, together with surrounding circum-
stances and legitimate inferences may establish
negligence. *Durfey* v. *Milligan* (1933), 265 Mich
97."

However, the court gave instead the following in-
structions:

"You are instructed that you are not at liberty to
guess or conjecture that the occurrence in question
may have happened because of some negligence of
Wolverine. But unless you believe from a pre-
ponderance of the evidence that the occurrence
happened through some alleged negligence of Wol-
verine, then you should find Wolverine not guilty.
No presumption that Wolverine was negligent
arises solely because a fire occurred. From the
happening of the fire involved in this case, an infer-
ence or presumption does not arise that the proxi-
mate cause of the fire was some negligent action
on the part of Wolverine. It is the law in this State
that the mere occurrence of an action ordinarily
raises no presumption of negligence. The burden
is not upon Wolverine to show that it in fact exer-
cised due care or diligence, or that the fire occurred
without being proximately caused by any failure of
duty on its part; but the burden remains with Am-
merman throughout."

At the completion of the court's instructions, both
counsel were asked if they had any objections to the
charges. Appellants' counsel did object to the omis-
sion of the above request.

The instruction requested by Ammerman was a proper request and substantially sets forth the law in the State of Michigan as cited in the case of *Durfey* v. *Milligan* (1933), 265 Mich 97. This quotation has been upheld in *Pappas* v. *Parsons* (1947), 316 Mich 523. In the case of *Gapske* v. *Hatch* (1957), 347 Mich 648, 654, the Court stated that:

"It is well-established law in Michigan that negligence may be inferred from circumstantial evidence as well as from direct proof."

Again in the case of *Wadsworth* v. *New York Life Insurance Company* (1957), 349 Mich 240, 253, the court stated:

"In the absence of direct proofs, the jury may draw reasonable inferences from the established facts and circumstances."

Counsel for appellants also objected to the court's comments that there was no proof that the Wolverine employees were the last to leave the building. The exact wording of the court's instructions is:

"Let me pass on now to case number two, the case of Ammerman against Wolverine. As you know, this action is founded upon the claimed negligence of Wolverine in providing an extension cord and leaving it against the wall. *There is no claim made, or there is no proof as to who was the last in the premises.* There is some time during which there is no evidence as to who was there. The last testimony, I believe, was that the Barr boys left sometime in the early afternoon, and that Mr. Barr testified that as far as was humanly possible, he could—that he had turned off the light. There was no further testimony as to who was in the premises, although it was undisputed that other people had access to the premises including De Korne Furniture Company, including Mr. Ammerman and his employees, and to some extent the Reynolds Company,

who had premises on the first floor." (Emphasis added.)

This is not an accurate statement of the testimony. Ammerman did claim that the last persons in the building were the Barr boys, employees of Wolverine, and furthermore the testimony established that the Barr boys were the last known persons in the building prior to the fire.

The court's failure to give the instructions as requested by appellants and the comments of the court set forth above practically foreclosed Ammerman from any chance of recovery and deprived appellants of a fair and impartial trial.

Cause is hereby reversed and remanded for a new trial. Costs to the appellants.

LESINSKI, C. J., and FITZGERALD, J., concurred.