# STATE OF MICHIGAN

# COURT OF APPEALS

JAC ENTERPRISES OF KAWKAWLIN, LLC,
d/b/a R&W AUTO SALES OF KAWKAWLIN,
INC.

UNPUBLISHED
April 14, 2015

Plaintiff-Appellee,

v

WILLIAM R. DEHATE, SHARON A. DEHATE,
RICHARD W. DEHATE, W&R AUTO SALES,
INC., and DEHATE ASSOCIATES,

No. 319792
Bay Circuit Court
LC No. 10-003762-CK

Defendants-Appellants.

Before: OWENS, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendants William DeHate, Sharon A. DeHate, Richard W. DeHate, W&R Auto Sales, Inc., and DeHate Associates appeal as of right from the trial court's order, which awarded plaintiff JAC Enterprises of Kawkawlin, LLC doing business as R&W Auto Sales of Kawkawlin, Inc., damages based on lost profits resulting from defendants' alleged breach of the parties' covenant not to compete. We affirm.

Plaintiff is owned by father and son, Joseph and Adam Mulders, and is in the business of selling vehicle parts, buying inoperable vehicles to repair and sell, and buying inoperable vehicles to sell "as is" to rebuilders. Plaintiff purchased the real estate, personal property, and goodwill owned by defendants at 1836 S. Huron Road, Kawkawlin, Michigan, and known as R&W Auto Sales of Kawkawlin. The parties also executed a covenant not to compete, which for a period of five years following the sale, prohibited defendants and their spouses and children from owning, operating, or being employed by any business that engaged in commercial activities that competed with those of plaintiff, specifically the selling of vehicle parts and inoperable vehicles, and the buying of inoperable vehicles to repair and sell those vehicles.

-1-

However, the covenant provided some exceptions that allowed defendants to sell operable used vehicles, classic vehicles over 20 years old, and four inoperable vehicles per month.[1]

Plaintiff filed a complaint for injunctive and other relief seeking to restrain and enjoin defendants from breaching the covenant not to compete. Plaintiff alleged that defendants competed against plaintiff's business in violation of the covenant by: (1) purchasing and repairing inoperable vehicles to sell to the public, (2) selling inoperable vehicles above the allowed four per month, (3) selling new and used parts, and (4) conducting business under the name W&R Auto Sales, a derivative of the name R&W Auto Sales, which plaintiff purchased the rights to.

Following a bifurcated bench trial for liability and damages, the trial court determined that defendants breached the covenant not to compete by repairing and selling inoperable vehicles to the public within the prohibited geographical area. With regard to damages, the trial court stated that there was no proof on the record for plaintiff's assumption that 100 percent of the sales of the motor vehicles made by defendants in violation of the covenant "would have resulted in a like sale with like profit to plaintiff's benefit." Nevertheless, relying on *DW Trowbridge Ford, Inc v Gaylen*, 200 Neb 103; 262 NW2d 442 (1978), an opinion from the Nebraska Supreme Court, the trial court believed it could "reasonably and rationally assume that a certain amount of the sale would inure to the benefit of the plaintiff," and adopted the rationale of *Trowbridge* "in assuming that 50 percent of the vehicles involved would have been sold by plaintiff had not defendants violated the covenant not to compete."

Therefore, the trial court determined that plaintiff was entitled to 50 percent of the profits, which amounted to $213,727.[2] The trial court further found that defendants incurred repair costs of $82,184.60 to make the vehicles they sold operable and that presumably plaintiff would have incurred similar costs. Because the trial court allocated 50 percent of the vehicle sales lost to plaintiff in the damage award, it only reduced the damages award by 50 percent of the repair costs, crediting defendants $41,092.30, and making the total amount of damages awarded to plaintiff for lost profits $172,634.70. The trial court also awarded plaintiff $30,000, which was half the value of the goodwill.

Initially, as plaintiff argues, defendants' question presented only challenges the trial court's opinion awarding damages based on lost profits. Thus, to the extent that defendants challenge the trial court's decision regarding liability, including interpretation and breach of the covenant not to compete, and its decision to award damages based on goodwill, we decline to

---

[1] Although the exact language limiting defendants to four inoperable vehicles per month stated, "Notwithstanding the foregoing provisions, all of said persons and parties will be entitled to sell a maximum of four motor vehicles per month during the 5 year period following the date of execution of this Covent [sic] Not to Compete," the parties agreed many times on the record that this referred to four *inoperable* vehicles.

[2] Plaintiff asserted that it was entitled to 100 percent of the profit from each of the motor vehicles sold in violation of the covenant, which totaled $427,454.

address these issues, as they were not raised in the statement of questions presented. See MCR 7.212(C)(5) (requiring an appellant to provide a concise statement of questions involved in the appeal); *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001) ("Independent issues not raised in the statement of questions presented are not properly presented for appellate review."). Accordingly, our review is limited to defendants' challenge of the trial court's award of lost profits.

We review a trial court's determination of damages following a bench trial and its factual findings for clear error. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). "A factual finding is clearly erroneous if there is no substantial evidence to sustain it or if, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Miller-Davis*, 495 Mich at 172-173.

Defendants essentially argue that plaintiff is not entitled to damages based on lost profits because its claim was based solely on its owners' testimony, it did not support its claim with financial documentary evidence, and its request for damages for the profit of every vehicle sold by defendants was unreasonable. However, contrary to defendant's argument, plaintiff did not seek damages for every vehicle sold. Rather, it only sought damages for vehicles that defendants purchased inoperable, repaired, and sold operable, and inoperable vehicles sold above the allowed four per month. Further, what plaintiff requested and what the trial court awarded were different. The trial court only awarded plaintiff 50 percent of the requested damages, and the analysis is based on what the trial court awarded. Additionally, defendants cite no authority to support their assertion that documentary evidence is necessary to support a claim for damages or that a plaintiff must limit its request for damages in any way. "This Court is not required to search for authority to sustain or reject a position raised by a party without citation of authority." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). Nevertheless, we conclude that the trial court did not clearly err by awarding plaintiff damages based on lost profits.

A trial court may award damages based on lost profits as long as the losses are "subject to a reasonable degree of certainty" and are not "based solely on mere conjecture or speculation." *Bonelli v Volkswagen of America, Inc*, 166 Mich App 483, 511; 421 NW2d 213 (1988); accord *Lorenz Supply Co v American Std, Inc*, 100 Mich App 600, 611-612; 300 NW2d 335 (1980). "This does not imply that lost profits must be determined to a mathematical certainty." *Id.* at 612. Rather, lost profits are recoverable even if the amount is difficult to calculate or is speculative to some degree. *Bonelli*, 166 Mich App at 511, citing *Lorenz*, 100 Mich App at 612. Michigan caselaw has made it clear that " 'where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery.' " *Wolverine Upholstery Co v Ammerman*, 1 Mich App 235, 244; 135 NW2d 572 (1965), quoting 15 Am Jur, Damages, § 23, 414-416. See also *Godwin v Ace Iron & Metal Co*, 376 Mich 360, 369; 137 NW2d 151 (1965). "The type of uncertainty which will bar recovery of damages is uncertainty as to the fact of the damage and not as to its amount . . . ." *Bonelli*, 166 Mich App at 511 (citation and internal quotation marks omitted). Further, "doubts as to the certainty of damages must be resolved against the wrongdoer." *Lorenz*, 100 Mich App at 612; accord *Routsaw v McClain*, 365 Mich 167, 171; 112 NW2d 123 (1961).

The trial court determined that defendants breached the covenant by buying inoperable vehicles, and repairing and selling those vehicles. A review of the record shows that the facts and all reasonable inferences from those facts indicate with reasonable certainty that plaintiff's decrease in sales was due to defendants' competing business. *Wolverine Upholstery*, 1 Mich App at 244 (stating that damages may be based on reasonable inferences from the facts and circumstances of the case).

To support its claim for damages, plaintiff submitted defendants' police book, which indicates that defendants profited $427,454 from vehicles sold in violation of the covenant. Joseph Mulders testified that before he purchased the business he examined the financial records, which showed that the business grossed approximately $500,000 in vehicle sales per year. But when he purchased the business, the vehicles sales were 50 to 60 percent lower, grossing approximately $250,000 per year. See *Callender v Myers Regulator Co*, 250 Mich 298, 300; 230 NW 154 (1930) (stating that there only needs to be a reasonably certain basis in the testimony for computing damages, and they can often be estimated by past sales). Adam Mulders testified that defendants were attending the same auctions and buying inoperable vehicles. He also testified that defendants were selling to some of the same customers as plaintiff. Both Joseph and Adam testified that there were "numerous" customers that used to buy vehicles from R&W Auto before plaintiff purchased the business, and after the purchase, the customers were no longer buying from R&W. Rather, according to defendants' police book, Joseph testified that those customers were buying cars from defendants. Further, defendants' business name, W&R Auto, was the reverse of plaintiff's business name and had a very similar sign. Even defendants admitted that the sign was the same color and shape and made by the same company. Joseph and Adam also testified that the similar name caused confusion. Plaintiff would receive defendants' mail, parts deliveries, customer complaints, and tax bills. Joseph also testified that they received many calls from customers asking about vehicles that were on defendants' lot, which was only two miles down the road.

Although much of the evidence presented was testimony by plaintiff's owners, it was appropriate for the trial court to rely on this testimony as to the business's lost profits. See *Lorenz*, 100 Mich App at 613 (finding that the plaintiff's testimony as to his company's lost profits due to defendant's breach, based on profits in past years, was a legitimate method to establish future losses, and the plaintiff was not disqualified in doing so simply because he was an interested party under MRE 601). Further, there was no evidence presented that plaintiff's business would have been unprofitable independent of defendants' competing business. Cf. *Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 176-177; 568 NW2d 365 (1997) and *Indemnity Marine Assurance Co, Ltd v Lipin Robinson Warehouse Corp*, 99 Mich App 6, 14-15; 297 NW2d 846 (1980) (finding that in both cases lost profits were not recoverable where the evidence showed that the businesses were unprofitable independent of the alleged wrongdoing of the defendants).

The record shows that the business was profitable until plaintiff purchased it. It is reasonable to assume that because defendants opened a competing business under a similar name within a close proximity that they retained R&W Auto's goodwill, which was supposed to go to plaintiff, and that this was the cause of the 50 percent decrease in plaintiff's vehicle sales. Therefore, the trial court's decision to award 50 percent of the damages requested by plaintiff is reasonably based on the evidence presented. Further, the trial court credited defendants for the

repairs they made to the vehicles sold in violation of the covenant, noting that plaintiff would have likely incurred the same costs. The record shows that the award was within the range of proofs and not unreasonable in amount. See *Wolverine Upholstery*, 1 Mich App at 245.

Affirmed.

/s/ Donald S. Owens
/s/ Kathleen Jansen
/s/ Christopher M. Murray