JACKSON COUNTY ROAD COMMISSIONERS *v.* O'LEARY.

1. BRIDGES — DAMAGE BY MOTORIST — NEGLIGENCE — CONTRIBUTORY
   NEGLIGENCE—EVIDENCE.
       In action by county road commissioners against motorist
       who ran into and damaged a 48-year-old steel frame, obso-
       lete-type, narrow bridge over a millrace, evidence supported
       trial court's findings that defendant's negligence caused the
       damage to the bridge and that plaintiff was free from con-
       tributory negligence.

2. SAME—MILLRACE—PRIMA FACIE CASE FOR NEGLIGENT INJURIES.
       In action by county road commissioners against motorist for
       damages to old bridge over a millrace, plaintiff established
       a prima facie case to show it was entitled to receive pay-
       ment for damages done by defendant to the bridge where it
       showed that for many years it had been in charge of the
       matter of construction and repair of the bridge, no showing
       of any present ownership of any rights by any person in
       the millrace, no testimony that the millrace preceded the
       use of the highway and no action was taken by any owner
       of a millrace to repair the bridge (CL 1948, §§ 224.19, 254.27,
       254.28).

3. SAME—MEASURE OF DAMAGES—REPAIRS—VALUE.
       In action by county road commissioners against motorist for
       damages to 48-year-old steel frame, obsolete-type, narrow

---

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 8 Am Jur, Bridges, § 84.
[5] 3 Am Jur, Appeal and Error, § 1227.
[6] 14 Am Jur, Costs, § 97.

bridge over a millrace, the measure of damages is the cost of repairing the bridge to make it as serviceable and good for plaintiff's purposes as it was before the accident, if such cost is less than the entire bridge was worth to the plaintiff as it stood before the accident but if the cost of repair is the same or greater than the value of the whole bridge to plaintiff as it stood before the accident, the measure of damages is the value of the bridge to plaintiff as it stood before the accident.

4. SAME—VALUE—EVIDENCE.

Value to county road commissioners of 48-year-old bridge over millrace *held,* not to have been shown by proper or competent evidence in action against negligent motorist, where evidence of damages is confined to cost of making repairs to the old bridge, the amount spent in making a new, different and temporary type of bridge and estimates of cost of new bridge of modern design.

5. APPEAL AND ERROR—REMAND—PARTIAL NEW TRIAL—DAMAGES.

Where defendant was properly found to be liable but an improper measure of damages was applied, the case is remanded for a new trial restricted to a determination of amount of damages.

6. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are awarded in action for damages to bridge, where finding as to liability is affirmed but partial new trial restricted as to damages is granted, since neither party has fully prevailed.

Appeal from Jackson; Boardman (Harry D.), J. Submitted October 4, 1949. (Docket No. 19, Calendar No. 44,511.) Decided January 9, 1950.

Case by Board of County Road Commissioners of the County of Jackson against Maurice O'Leary for damages caused when he ran into bridge with his automobile. Judgment for plaintiff. Defendant appeals. Reversed and remanded for redetermination of damages.

*Phillip C. Kelly,* for plaintiff.

*Bisbee, McKone, Badgley & McInally,* for defendant.

REID, J. This is an action to recover for damages alleged as having been negligently caused by defendant to a highway bridge in Jackson county, the bridge being part of the county road system of the county. The cause came on for trial before the court without a jury, a jury not having been demanded. From a judgment for plaintiff board of county road commissioners in the amount of $4,850, the defendant appeals.

During the night of November 25, 1947, defendant drove his car into the upper and supporting structure of a bridge over Liberty Millpond on Liberty road in Jackson county, and struck the bridge with such force that a part of the bridge was knocked down into the stream. A part of the traveled portion of the bridge was thus left unsupported and fell down into the stream. Defendant's automobile went into the stream carrying defendant with it.

Plaintiff claims that prior to the accident, the bridge was in good repair and usable condition; that plaintiff was free from negligence contributing to cause the accident; that defendant negligently drove his car into the supporting superstructure of the bridge on his left-hand side of the traveled portion of the bridge, his (defendant's) negligence being the sole cause of the accident; and that the resulting damages amount to the sum awarded therefor by the court, to-wit, $4,850.

Defendant claims (a) the proofs fall short of showing him negligent; (b) that plaintiff failed to show itself free from contributory negligence; (c) that the bridge spanned a millrace and that without proof as to which was built first, the bridge or the

raceway, plaintiff is not shown to be the real party in interest, on the ground that the owner of the millrace has the burden of maintaining the bridge if the bridge was built before the millrace.

Defendant further claims that the bridge was old and of an obsolete type and that the actual value of the bridge at the time of the accident was $500 and that the judgment for $4,850 is excessive.

Mr. Sendek, a member of the State police, arrived at the bridge about 4:15 a.m. (which seems to have been about 2 hours after the accident) on the night in question, and saw the condition of the bridge and of defendant's automobile, which had run into the bridge, and later in the same morning saw defendant at the residence of a friend of defendant. Mr. Sendek described the actions and talk of the defendant at that time and described his observation of the odor of defendant's breath as of intoxicating liquor. Sendek gave his opinion that defendant was then intoxicated. Sendek testified as follows:

"*Q.* Did he [defendant] tell you how the accident had happened?

"*A.* All he could state was that he was coming down a hill and he ran off the road."

There were offered and received in evidence pictures which were taken of the bridge and of defendant's car as it was after the accident, with the front end in the river on top of a steel girder and the back end partly up on the bank and also showing tracks of defendant's car in the snow.

There was sufficient testimony to justify and support the court's finding that defendant's negligent acts caused the damage to the bridge, and that portion of the court's finding is affirmed.

The bridge in question was of steel frame but was of obsolete type. There was a sign posted, "narrow bridge." The bridge bore upon it the name plate of

the manufacturer, "Massillon Bridge Company," and the year 1899 seems to have been approximately the date of the construction of the bridge.

There was uncontradicted testimony that the bridge in question was in use prior to the accident, carried all the traffic that went over it, including the county road commissioners' gravel trucks, that it was in serviceable condition, and that the authorities allowed full traffic, without restrictions as to weight.

The record fairly showed plaintiff free from contributory negligence.

Defendant cites sections of the statute as follows:

"It shall be the duty of all owners, occupiers, or possessors of mills or other water works, where any race or races appertaining to the same may cross a public highway, to keep and maintain a good and sufficient bridge or bridges over the same, except where said mills have been erected and the races dug previous to the formation of said highway. Such bridges shall be constructed and maintained in compliance with the specifications of the commissioner or commissioners having jurisdiction over the road adjacent thereto." CL 1948, § 254.27 (Stat Ann § 9.1197).

"In all cases where the owner or owners, occupiers, or possessors of any such mill or mills, or other water works, shall refuse or neglect to construct such bridge or bridges, or shall refuse or neglect to keep the same in good repair, it shall be the duty of the commissioner or commissioners having jurisdiction over the road adjacent thereto to proceed forthwith to erect or repair such bridge or bridges, at the expense of the person or persons whose duty it was to have erected or repaired the same." CL 1948, § 254.28 (Stat Ann § 9.1198).

Defendant claims a want of showing that plaintiff is the real party in interest.

There is testimony to show that for many years plaintiff has been in charge of the matter of con-

struction and repair of the bridge and there is no showing of any present ownership of any rights by any person in the millrace, also no testimony that the millrace preceded the use of the highway. No action was taken by any owner of a millrace to repair the bridge.

The authority and duty of plaintiff is further set forth in CL 1948, § 224.19 (Stat Ann § 9.119) in part as follows:

"Said board of county road commissioners * * * shall have authority to construct bridges and culverts on the line of such road, and to repair and maintain the said roads, bridges, and culverts; and further that such commissioners shall take over, construct and maintain all bridges included in the proposed system of county roads. * * * Said board of county road commissioners may maintain in its own name an action for an injury to any county road or to any part of the whole width thereof as laid out and established, or to any of the improvements thereon."

We consider that the trial court was correct in ruling plaintiff had established at least a *prima facie* case to show it was entitled to receive payment for damages done by defendant to the bridge. The duty of plaintiff to maintain the bridge was paramount.

The sole remaining question is as to the amount of damages.

The trial judge quoted with approval:

"Ordinarily, the measure of damages for injury to a bridge, is the cost of repairing it." *State Highway Commission* v. *American Mutual Liability Insurance Co.,* 146 Kan 187 (70 P2d 20).

The defendant claims the rule as stated by the trial judge above quoted to be incorrect. Defendant claims the correct standard to measure the damages is the difference between the real cash value of the

structure as it stood before being damaged, and the real cash value after the injury, citing *William R. Roach & Co.* v. *Blair*, 190 Mich 11, in which case plaintiff claimed damages because of defendant negligently causing a fire which destroyed plaintiff's warehouse and contents. On a retrial of the instant case, it will be important to have in mind that the instant case differs from the *Roach Case*, in that there are in the instant case the elements of an imperative requirement of public service and a want of the objective of operating the bridge for profit.

In the instant case, the bridge is not shown to have had a cash value, except as we gather, in practical effect, about the same as junk or for possible re-use. The bridge was only partly destroyed by defendant's negligent acts. But plaintiff was required to furnish to the public a safe and proper bridge for use.

The plaintiff was not in a situation where it needed or desired to sell the old bridge. Apparently the bridge would have lasted at least a considerable length of time had it not been for the accident. So it would seem that plaintiff lost more than the worth of the old bridge for re-use or as junk. The nature of the construction of the bridge was such that it was of little value to anyone but plaintiff.

We laid down the rule in *O'Donnell* v. *Oliver Iron Mining Co.*, 262 Mich 470, as follows (syllabus 6):

"If injury to property caused by negligence is permanent or irreparable, measure of damages is difference in its market value before and after said injury, but if injury is reparable, and expense of making repairs is less than value of property, measure of damages is cost of making repairs."

The measure of damages in the instant case is the cost of repairing the bridge to make it as serviceable and good for plaintiff's purposes as it was before

the accident, if such cost is less than the entire bridge was worth to the plaintiff as it stood before the accident. If the cost of repair is the same or greater than the value of the whole bridge to plaintiff as it stood before the accident, the measure of damages is the value of the bridge to plaintiff as it stood before the accident.

The amount of damages as found by the trial judge, $4,850, is very evidently based on a bid made and testimony given by witness Donald H. Vander-Veen. VanderVeen testified that his occupation for 25 years has been as contractor in highway and bridge construction and that he examined the bridge, January 15, 1948, to determine the cost of restoring it, and that $4,850 is a reasonable estimate of the cost of restoring the bridge to the condition it was in before the accident, and that he offered to restore it for the sum specified, $4,850, and it would then be a safe bridge to travel on.

Mr. VanderVeen was unable to state what the condition of the bridge was before the accident, except from the condition of the bridge as he saw it after the accident. He is not an engineer, he was unable to state how many pounds of steel would be required to replace the steel necessary to be replaced, and unable to state on the witness stand how much plank there was on the bridge. He was unable to state offhand the cost of steel per pound, and could not give as a witness what the normal life of a bridge of the type in question would be. The witness had not his notes with him at the trial from which to give the details of the matters that would go into the making of his bid and his estimate of the expense of the repair. His bid seems to have included items which might not have been required by plaintiff.

The testimony of defendant's witness George M. North is not clear but it can be construed to mean that the total cost of fabricating the steel and erect-

ing it in place, including labor costs, would be $1,-507.50 exclusive of the planking, which would be between $300 and $400. The details given by this witness of the items that would necessarily be involved in repairing the bridge are not item by item disputed by any testimony excepting the generalized statement of witness VanderVeen as to his estimate of the total cost of the repair to the bridge.

There is no basis in the testimony for a finding that the bridge was worth $4,850 to the plaintiff in the condition it was in before the accident. There is not satisfactory testimony to be a basis for determining the damages according to the rules hereinbefore prescribed.

It appears that the plaintiff did not conclude to repair the bridge but on the contrary, installed a different and temporary type of structure over the stream and has spent in doing that work, up to the time of trial, $4,392.48, and estimated the to'al cost to be $5,819.86. This was for a temporary type of structure but it was for the entire bridge. Witnesses testified that estimates of the cost of a new bridge, which would not be temporary in character and would be of modern design, and perhaps considerably wider than the old bridge, might be about $20,-800 to $40,000.

When we compare the amount of VanderVeen's bid, being $4,850, with $5,819.86 for a new, different and temporary type of bridge, the award by the court seems under the testimony to be too great in proportion to the total cost of the new, different and temporary structure that was afterward determined on by the considerate judgment of the plaintiff. Plaintiff evidently now has a better structure than it would have had if the part damaged had merely been replaced or repaired, for we must assume that the plaintiff acted advisedly as public officers in determining upon the new, different and temporary

structure that is now in place in preference to repairing the old bridge. Plaintiff apparently has gained something by substituting the present structure for the repair of the old structure.

We are of the opinion that the amount found by the court is not established by proper or competent evidence. The award is set aside. As to the award, the judgment is reversed and the cause remanded for a new trial. The defendant is to be found liable. and the new trial shall be restricted to a determination of the amount of damages. Neither party having fully prevailed, no costs are awarded.

Boyles, C. J., and North, Dethmers, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred.