## MELLIOS *v.* CHARNEY.

1. Appeal and Error—Nonjury Cases—Questions of Fact—Preponderance of Evidence.

   The Supreme Court will not substitute its judgment for that of the trial court on questions of fact in a nonjury case unless the evidence clearly preponderates in the opposite direction.

2. Landlord and Tenant—Repairs—Damages—Evidence.

   There was competent evidence to support trial court's judgment for $1,634.50 for plaintiff landlord in his nonjury action against tenant for repairs necessary to restore premises to condition when taken at commencement of 5-year term, reasonable use and wear thereof and damage by the elements excepted, where labor and materials paid out therefor by subsequent tenants was $1,441.21 besides labor of their own valued at $1,180.

3. Damages—Restoration of Building—Cost of Repairs.

   The measure of damages where the restoration of a damaged building can be made is the reasonable cost of restoration or repairs.

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 10, 1957. (Docket No. 28, Calendar No. 47,147.) Decided November 26, 1957.

Action by Stefo Thomas Mellios and Gust Thomas Mellios against Nicholas Charney for damages to leased property. Judgment for plaintiffs. Defendant appeals. Affirmed.

---

References for Points in Headnotes

[1] 3 Am Jur, Appeal and Error § 900.
[2, 3] 32 Am Jur, Landlord and Tenant § 816.

*Paul C. Younger,* for plaintiffs.

*William H. Wise,* for defendant.

Sharpe, J.   This is an action to recover damages for an alleged breach of a written lease of plaintiffs' premises by defendant.   The essential facts are as follows: On or about September 23, 1949, the parties entered into a lease for a period of 5 years with rent payable at the rate of $100 per month.   The lease contained the following:

"And the said party of the second part, for himself, his executors, administrators and assigns, does hereby hire the said premises for said term of 5 years as above mentioned, and covenants well and truly to pay, or cause to be paid, unto the said parties of the first part their representatives, heirs and assigns, at the days and times above mentioned, the rent above reserved, and does further covenant that he will not assign or transfer this lease, or sublet said premises, or any part thereof, without the written assent of said parties of the first part; and does further covenant that he will at his own expense, during the continuance of this lease, keep the said premises and every part thereof in as good repair as when taken, and at the expiration of said term, yield and deliver up the same, in like condition when taken, reasonable use and wear thereof and damage by the elements excepted, and does further covenant that said premises, during the continuance of this lease, shall be used and occupied for commercial purposes and assigns [*sic*], does further covenant, that at the end of the said term, he shall and will peaceably and quietly leave, surrender and yield up the said premises unto the said parties of the first part, their heirs and assigns."

Plaintiffs purchased the building in question in about 1945 or 1946.   It is a brick building approximately 30 years old.   Plaintiffs had operated a res-

taurant and bar on the first floor. The second floor contained 2 apartments. An oil heating system was in the basement. After operating the restaurant for approximately 18 months, defendant purchased a place of business about 150 feet west of plaintiffs' building and moved his bar and restaurant to the new site. The first floor of plaintiffs' building stood empty for a period of approximately 3-1/2 years. Defendant paid all rent due during this period. The building was heated sufficiently for the 2 apartments on the second floor.

It also appears that while the lease terminated in September, 1954, plaintiff permitted the first floor of the building to stand empty until December, 1955, at which time it was rented to Clyde Schneider and his brother, who repaired the damage and received 10 months' free rent at $125 per month for such repairs. No repairs were made to the upstairs apartments.

The cause came on for trial without the aid of a jury. At its conclusion the trial court awarded plaintiffs a judgment in the amount of $1,634.50. Defendant appeals and urges that he should not respond in any damages, and that if he is liable in damages the trial court granted an excessive amount.

During the trial of the cause plaintiffs introduced testimony to the effect that ordinary wear and tear would not have caused the damage during the time defendant held the lease on the premises; that the plaster was loosened by steam coming out of steam pipes; that floors were buckled and rotted; that plaster was missing in places where the steam pipes were not working properly; that the women's toilet was cracked and had to be reset with new fittings; that the covering for electrical wires was rotted and deteriorated.

Defendant testified that during the term of the lease he did not change the front doors or remove

the thresholds; the doors and thresholds were in the same condition in 1954 as they had been at the beginning of the term in 1949. Water had seeped in under the front door not only during the defendant's tenancy but previously thereto. This seepage had caused the floor at that point to warp. In the kitchen leaks around the chimney had previously softened and loosened the plaster. The sink was in the same condition at all times. The floor in the tavern room had a rough, unpainted and unoiled surface. It was not in such poor condition that it couldn't be used and it was used.

One of the plaintiffs visited the premises in 1951 and did not complain of the care being taken of them. He never asked for the possession of the premises after the defendant moved his bar and never offered to cancel the lease. The restaurant equipment remained in the building, but the defendant couldn't find anyone to operate the restaurant and the equipment was moved at the end of the term. The removal from the premises was orderly, with no damage to the premises and without any loose wires.

The heating plant in the basement had to be operated by the defendant to furnish heat to the 2 apartments on the second floor. About 3 pipes on the tavern side and 3 or 4 such pipes on the restaurant side, some partially insulated, provided sufficient heat to keep the first floor at a temperature of 70 to 75 degrees. When the tavern had been used the radiators were turned off since the pipes from floor to ceiling provided sufficient heat. The tenants on the second floor never complained of insufficient heat. There was a leak in one of the restaurant radiators which was there in 1949.

Before surrender of the premises in September, 1954, the defendant had the Kirby Plumbing & Heating Company inspect the heating plant. The plumber, with some 15 years' experience, checked over the

plumbing and found it all in good condition. This was done in September, 1954. This plumber, Morris Eisler, worked in the building from time to time and knew the temperature ranged from 60 to 75 degrees, due to the long pipes running through the first floor.

Defendant also urges that the repairs made exceeded the necessity of restoring the building to its 1949 condition, in that the floors when repaired were in better condition than they were at the beginning of the lease; that the wiring was almost doubled in capacity and entirely renewed, and that plaintiffs' only expense was 10 months' free rent at $125 per month, or a total of $1,250.

Defendant urges that there is no basis to support the judgment of $1,634.50. There is evidence showing Clyde Schneider paid out the sum of $1,441.21 for labor and materials, which did not include the labor of Clyde Schneider and his brother, the value of which he estimated at $1,180, making a total cost of repairs of $2,621.21. It thus appears to be a question of fact to determine the amount of plaintiffs' damage by reason of neglect of the property by defendant.

We have often said in cases tried before this Court that we will not substitute our judgment for that of the trial court on questions of fact unless the evidence clearly preponderates in the opposite direction. In the case at bar the trial court had 2 sets of figures relating to the cost of repairs. We find that there was competent evidence to support a judgment varying from $1,250 to $2,621.21.

In *Tillson* v. *Consumers Power Co.,* 269 Mich 53, 66 (38 NCCA 722), we quoted with approval from *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo, Ohio,* 126 Ohio St 140, 150 (184 NE 512), as follows:

"'In cases in which restoration of the building damaged can be made, the measure of damages is the reasonable cost of restoration or repairs.'"

See, also, *Powers* v. *Merkley,* 293 Mich 177.

The judgment is affirmed, with costs.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.