BAYLEY PRODUCTS, INC., *v.* AMERICAN
PLASTIC PRODUCTS CO.

1. WITNESSES—IMPEACHMENT—PRIOR INCONSISTENT STATEMENTS—
   REVERSING OF ADMISSIBILITY RULING.

   The admission of a witness's prior inconsistent statements for impeachment purposes was not prejudicial error even though the statements were introduced in violation of the trial court's ruling that they were inadmissible where the court later reversed itself and correctly ruled that they were admissible.

2. WITNESSES — EXPERT WITNESS — QUALIFYING WITNESS — DIRECT
   TESTIMONY — FOUNDATION.

   A witness's blurting out a number, possibly intending to give his estimate of the value of a building damaged by fire, after having been asked by counsel, who was trying to qualify the witness as an expert on the building's value, to answer "yes" or "no" to whether he knew the building's value was not reversible error where counsel took pains to avoid mention of actual figures until a foundation had been laid for direct testimony on the question of value, the meaning of the witness's statement was indefinite because he was interrupted by opposing counsel

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses §§ 675, 767 *et seq.*
    May a witness who testifies to facts be impeached by showing of prior inconsistent expressions of opinion by him.   158 ALR 820.
[2] 58 Am Jur, Witnesses § 714.
[3] 50 Am Jur 2d, Landlord and Tenant § 230.
[4-9, 11] 22 Am Jur 2d, Damages §§ 132, 133.
    Cost of building or repairs thereto as necessary or proper element in fixing damages for its destruction or injury.   7 ALR 277.
[10] 31 Am Jur 2d, Expert and Opinion Evidence §§ 10-13.

before he could finish, and the court sustained opposing counsel's objection and ordered the partial statement stricken from the record.

3. LANDLORD AND TENANT—NEGLIGENCE—STANDARD OF CARE.

A lessee is held to a common-law standard of care in an action for negligently allowing the leased premises to be destroyed even though the lease obligated the lessee to conform to the requirements of underwriters where the lease did not contain an express waiver of the common-law requirements.

4. DAMAGES—REAL PROPERTY—NEGLIGENCE—IRREPARABLE DAMAGE.

The measure of damage to real property in a negligence suit where the damage cannot be repaired is the difference between the market value before and after the damage.

5. DAMAGES—REAL PROPERTY—NEGLIGENCE—REPARABLE DAMAGE.

The measure of damage to real property in a negligence suit where the damage can be repaired and the cost of repairs is less than the market value is the cost of repairs.

6. DAMAGES — REAL PROPERTY — NEGLIGENCE — COST OF REPAIRS — PROOF OF MARKET VALUE.

A judgment awarding damages for the repair of a building damaged by fire is infirm if there was no evidence of the building's market value before the fire or if there was no evidence from which market value could reasonably be inferred, because the award of damages for repairs is proper only if the repairs are less than the building's market value.

7. DAMAGES—RIGHT TO DAMAGES.

Plaintiffs were entitled to some recovery for damages to their building where the question of defendants' negligence in allowing the building to be destroyed had been properly submitted to the jury and the jury found the defendants negligent.

8. DAMAGES—REAL PROPERTY—COST OF REPAIRS—MARKET VALUE— APPEAL AND ERROR.

The Court of Appeals will uphold, if possible, a jury verdict and judgment awarding plaintiffs the cost of repairs of damages to their building caused by defendants' negligence even though the record does not contain an exact figure of the building's market value based on opinion evidence of an expert witness where there was evidence on which the jury could reasonably

infer that the market value exceeded the cost of repairs, the question of defendants' negligence was properly submitted to the jury, there was sufficient evidence to support a finding of negligence, the defendants, even though questioned by the trial court, did not introduce evidence of market value, choosing to move to dismiss on a lack of evidence, and where to reverse and remand would entail a lengthy retrial.

9. DAMAGES—REAL PROPERTY—COST OF REPAIRS—MARKET VALUE—APPEAL AND ERROR.

Testimony indicating that plaintiffs' building, damaged by fire, had a market value of $150,000 minimum to $210,000 maximum and a median value of $179,550, based on a formula of replacement cost less depreciation was sufficient to support the jury's verdict awarding plaintiffs $180,860 as the cost of repairs even though no exact figure of the building's market value based on expert testimony had been introduced, because there was some testimony that the jury could have used to conclude that the market value exceeded the cost of repairs.

10. COSTS—TAXING ADDITIONAL COSTS—TIMELY REVIEW—ADMINISTRATIVE ERROR.

Plaintiffs' motion to allow them to tax the costs of expert witnesses was properly granted although the motion was made nearly a month after the notice of taxation of costs where the plaintiffs had never been notified by the clerk's office that costs had been taxed without the expert witnesses' fees and where the trial court found that the plaintiffs had been diligent in pursuing the matter (GCR 1963, 107, 526.10, 907[5]).

11. DAMAGES—REAL PROPERTY—NEGLIGENCE—COST OF REPAIRS—MARKET VALUE—REPLACEMENT COST LESS DEPRECIATION.

Amount of jury verdict awarding plaintiffs $180,860 as the cost of repairs of a building damaged by fire was reduced to the market value figure of $179,550 where there was no expert testimony as to the market value of the building and the $179,550 was arrived at by applying the replacement cost-less depreciation formula, approved in appeals from assessments for tax purposes.

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 November 12, 1970, at Detroit. (Docket No. 8161.) Decided February 17, 1971. Leave to appeal denied June 16, 1971, 385 Mich 754.

Complaint by Bayley Products, Inc., Torkum Prince and Beatrice Prince, and Central Mutual Insurance Company against American Plastic Products Company and Swedish Crucible Steel Company for negligence in causing a building to be destroyed by fire. Verdict and judgment for plaintiffs. Defendants appeal. Judgment modified with respect to damages.

*Head & Denenberg,* for plaintiffs.

*Arthur W. Sempliner,* for defendants

Before: McGregor, P. J., and Holbrook and O'Hara,* JJ.

O'Hara, J. Plaintiffs were owners of an industrial building located in Novi, Michigan. Defendants were lessees and occupiers of this building. The building was gutted by fire on October 14, 1965. It was insured by Central Mutual Insurance Company which paid $90,000, the policy limit, and was thereby subrogated in that amount to its co-plaintiffs' claim.

The building was being used by defendants for a plastic injection molding operation. In this operation an injection molding machine is used. Basically, the operation of the machine is as follows: (1) plastic pellets are melted by a heating unit and the plastic flows in a liquid state to the injection unit; (2) the liquid plastic is forced into a die cavity where it is cured for a short period of time; and (3) the dies are pulled apart and the finished piece is extracted from the die cavity. In most injection molding machines the dies are opened and closed

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

by means of hydraulics. A hydraulic system was used on the molding machine in question. The hydraulic fluid, in this case an oil, was carried from the hydraulic pump unit to the power cylinder by means of a reinforced rubber hose. In the floor plan arrangement used in this plant, the hydraulic hose on the back of one machine was approximately opposite, but about 20 to 30 feet away from the plastic heating unit of the next machine.

The theory of the plaintiffs was that the hydraulic hose burst on one molding machine and sprayed, under high pressure, a fine oil mist across onto the plastic heating unit of the adjacent machine. Plaintiffs alleged that the defendants were negligent in that: (1) they did not properly inspect the hydraulic hoses as to their continued ability to carry the required pressure without bursting; (2) they failed to instruct their employees as to what to do in case of a fire; (3) they failed to use a fire resistant fluid rather than flammable liquid in the hydraulic systems of the machine; (4) they failed to properly locate fire extinguishers so they would be readily available for use, and (5) defendants' employees failed to press the off-button and thus stop the flow of oil which was feeding the fire.

Defendants' theory is that the fire resulted from a fire in one of the machines which was caused by a plastic pellet shorting out the electric heater. This, it is claimed, was not caused by defendants' negligence. They assert that the employees were properly instructed as to safety; that there was a fire extinguisher beside every machine; that the hoses and oil are the standard items used in the industry; and that since the fire was an electrical fire, shutting off the machine would have had no effect. Defendants also asserted that the fire could not have happened as plaintiffs theorize because the heating

units were not hot enough to ignite the type of oil used.

After a full trial, a jury found in favor of the plaintiffs and against the defendants in the amount of $180,860 as compensation for the destruction of their building.

Defendants' numerous allegations of error will be treated *seriatim*.

Defendants first assign as error the admission of testimony of Gerald McFadden, one of defendants' witnesses, on cross-examination. McFadden is alleged to have made statements to firemen shortly after the fire which were inconsistent with his testimony on behalf of defendants at trial. On cross-examination plaintiffs' counsel sought to introduce the inconsistent statement for impeachment purposes. The trial court ruled that these prior statements could not be used even for impeachment purposes. However, plaintiffs' counsel, despite the court's ruling continued to question McFadden as to these statements and elicited evidence in relation thereto. Sometime later the trial court reversed its position and ruled that these statements were admissible for impeachment purposes.

While plaintiffs' counsel might be subject to some censure for not abiding by the court's ruling, a review of the record indicates that the statements were properly admissible for impeachment purposes. *Kalamazoo Yellow Cab Company* v. *Kalamazoo Circuit Judge* (1961), 363 Mich 384; *Hill* v. *Harbor Steel & Supply Corporation* (1965), 374 Mich 194. In light of the court's subsequent ruling to that effect, defendants cannot prevail on the basis of prejudicial error in this respect.

At another point in the proceedings, plaintiffs' counsel attempted to qualify a former owner of the involved premises, named Kovacs, as an expert in

the value of buildings. He failed to do so. Defendants assign as error the following exchange which occurred during plaintiffs' attempt to qualify the witness:

"*Q.* (*By Mr. Denenberg* [*plaintiffs' counsel*] *continuing*): Were you familiar, sir, at the time that the building was sold, were you familiar with the value of the building? Just answer yes or no, were you familiar with the value of the building?

"*A.* Well, judging from my basis of evaluation, a building 300 * * *."

At this point defendants' counsel interposed an objection which was sustained and the witness's partial answer was stricken from the record.

Plaintiffs' counsel took pains to avoid the question of evaluation until a foundation was laid. There is no showing of bad faith on the part of plaintiffs' counsel. The blurted-out statement of the witness was non-responsive and incomplete. The sense of what the witness intended to say is indefinite because he was cut off. The trial court did sustain the defendants' objection and ordered stricken from the record this partial statement. We can find no reversible error in this incident. GCR 1963, 529.

Defendants next contend that there was insufficient evidence for the jury to find proximate causation under the previously described theory of the plaintiffs. The record reveals a great deal of conflict in the evidence on several essential questions: (1) the useful life of the hoses used to conduct the oil and the reasonableness of the defendants' failure more frequently to inspect them; (2) the foreseeability of the possibility of fire resulting from the use of an allegedly flammable oil in close proximity to heating elements; (3) the possibility that had the machine been shut down immediately the flow of oil would have ceased and the fire would have been

controllable; and (4) the foreseeable consequences of the defendants' failure to instruct the employees to shut off the machines in case of emergency. There appears to be more than sufficient evidence to carry these questions to the jury. A fact issue was created, including the question of proximate causality.

Defendants urged as the standard of care required of them the language in the standard form lease between the parties requiring defendants to conform to the regulations and requirements of underwriters. They assign error in the action of the trial court which in effect held them to common-law standards of care in addition to the lease-provided standards. Whatever the lease requirements were, they do not relieve defendants of maintaining the common law standard unless some *express* waiver thereof was contained in the lease. We find none. Consequently, we find no error.

We consider next the questions raised by defendants which relate to proof of damages and the proper measure of damages in this case. They consumed most of the time spent on oral argument and present the most substantial issue in this appeal.

It is the position of defendants on this point, as we understand it, that the verdict of the jury is fatally infirm for lack of proper and acceptable proof of the damages sustained; first, because there was no valid proof of the market value of the property before the fire; and, second, that since such proof was lacking, the verdict of the jury which was in the amount of the estimate of repairs is likewise fatally infirm because of the failure of proof that the cost of repairs was less than the reasonable market value before the fire.

It is the settled law of this state that the measure of damages to real property, if permanently irreparable, is the difference between its market value before and after the damage. However, if the injury is reparable, and the expense of repairs is less than the market value, the measure of damage is the cost of the repairs. (See, generally, 7 Callaghan's Michigan Civil Jurisprudence, § 23, p 253, and the cases cited thereat.)

Defendants are entirely correct that in the restricted sense of opinion evidence by a qualified expert as to market value immediately before the fire, the record is silent. It is further without question that able defense counsel preserved this issue for review. First, the following request to charge as formally submitted to the court below.

"Should you find the defendants negligent then and only then are you to consider the issue of damages. With regard to damages if the defendant was negligent the plaintiff is entitled to receive the cost of repairing the building but only if the cost of repairing is less than the market value. If the market value at the time of the fire was greater than the cost of repairing the building then the plaintiff is entitled to receive the market value.[1] I hereby instruct you that there has been no evidence as to what the market value of the building was at the time of the fire and if you are unable to compute damages in accordance with the standard of measuring the cost of repair along side the market value and giving that which is the lower of the two figures then of course you must bring in a verdict of no cause of action for the plaintiff." (Authorities cited.)

---

[1] This statement in defendants' request to charge that plaintiffs are entitled to the greater of the two figures is clearly a mistaken expression of counsel's intended request to the effect that plaintiffs should receive only the market value if it is the *lesser* of the two figures.

When this request to charge was not given, defense counsel again timely objected because it was not and the trial judge stated on the record:

"O.K., you say [saved] that question."

Additionally, a motion to dismiss on this same ground was made and denied. The question is squarely before us for review. The question as we conceive it is: was the record devoid of proof upon which the jury could properly find that the cost of repairs, which was the exact amount of the verdict, was less than the market value of the premises? It is to be noted that a qualified expert witness did testify that the building was repairable and that the cost of repairs would be $180,860.

It is manifest that if there is no proof of market value, and no evidence from which the jury could reasonably infer market value, the verdict is hopelessly infirm.

We reason that since we have already held that the issue of liability was one of fact and properly submitted to the jury and since the jury found defendants negligent, plaintiffs are entitled to recovery in some amount. We further conclude that by awarding the exact amount of the estimated cost of repairs, the jury of necessity found the building was repairable and that the cost of repairs was less than the market value. Query: on what evidence could the jury so find, or from what proofs could the jury reasonably infer this same result?

We think the applicable decisions of our Supreme Court accord us sufficient latitude to sustain the verdict of the jury.[2] If it is possible, we believe we should. We reason thus: if we reversed, we would of necessity reverse for a new trial or possibly a new trial limited to the issue of damages. We held

[2] See *Adams* v. *Grand Trunk W. R. Co.* (1927), 240 Mich 300.

earlier that the issue of the defendants' liability was properly submitted to the jury and that there was proof of negligence, which, if believed by the jury, was sufficient to support its finding of liability.

It is further to be noted that defendants, relying on a lack of proof of market value and moving to dismiss on this ground, chose not to introduce any evidence of market value. Bench-questioned on oral argument as to the reason, defense counsel replied with admirable candor, "we didn't think it was our obligation". We do not pass on the precise point decisionally because it was not raised or briefed. We suggest, however, (realizing that what we say is *obiter dicta*) that there is something somewhat anamolous about a party relying on an insufficiency of proof that is in a sense a technical deficiency which could be supplied by proof by that party himself. The way was clear, if defendants believed the cost of repairs exceeded market value, to introduce their own testimony as to market value. If defendants had done so, the fact issue framed under the instruction and proof of the cost of repairs would have been squarely before the jury. This much can be said with certainty. To reverse and remand for a whole or partial new trial would expose both parties, a trial court, and possibly a jury, to another lengthy and expensive proceeding. The transcript exceeds eleven hundred pages covering in excess of seven full court days. We think it our duty, absent a clear injustice to defendants, to avoid this possibility.

As earlier noted, we believe we can dispose of the appeal on permissible legal grounds without a judicial decision on the obligation of the defendants, if any, mentioned above.

There were indicia of market value in the testimony which ranged from $150,000 minimum to

$210,000 maximum and a median figure of $179,550 based upon a formula of replacement cost less depreciation.[3]  We are quick to point out that had the jury accepted the minimal proofs of market value as materially *exceeding* the cost of repairs, we would be hard put to sustain the verdict.  As it is, we can almost apply the *de minimus* rule because the difference between the formula figure of market value and the cost of repairs is merely $1,310. Realizing that this case may be the subject of an application for leave to appeal, and a possible grant thereof, we make our decisional holding unequivocal.

We hold here that while the record does not contain an exact figure based upon opinion evidence of a qualified expert witness as to market value, there was sufficient evidence from which the jury could reasonably infer that the market value exceeded the cost of repairs and thus that the verdict in the amount of the uncontradicted proof of the cost of repairs is not infirm.

We pass now to the last issue on appeal, *viz:* the taxation of costs as to which defendants also claim error.  On September 10, 1969, notice of taxation of costs, including those for expert witness fees, was filed with the clerk of court.  This was within the 30-day limitation set by GCR 1963, 526.10.  Although the bill of costs indicates that the costs were taxed on September 15, 1969, the plaintiffs were never notified by the clerk's office that the costs had been taxed without the expert witness fees.  The clerk is required to notify all parties of the taxation of costs.  GCR 1963, 907(5) and GCR 1963, 107.  Plaintiffs discovered on October 10, 1969, that the expert

---

[3] A formula which has been accepted as proof of market value for assessment purposes but disapproved, if not rejected, in a damage loss case (see *Twenty-Two Charlotte, Inc.* v. *City of Detroit* (1940), 294 Mich 275, 283; *Adams* v. *Grand Trunk W. R. Co.* (1927), 240 Mich 300).

witness fees had not been taxed and they made a motion for the fees some three days later on October 13, 1969.

Since the plaintiffs were not properly notified by the clerk's office as to the disposition of the taxation of costs, the trial court treated the motion of October 13, 1969, as being a motion for review of the clerk's action. Defendants objected in the trial court and object on appeal that such motion was not timely as not being made within the 5-day period of review allowed by GCR 1963, 526.10. Because of the failure of the clerk to properly notify plaintiffs, the exact date on which the 5-day period of review should commence could not be determined. The trial court allowed the motion because it found that plaintiffs were diligent. On review, the trial court allowed the expert witness fees. We cannot sustain defendants' claim that diligent plaintiffs should be penalized for the administrative error of the court clerk. Defendants have not shown that they have been prejudiced by this slight delay. The action of the trial court was proper.

Since the application of the replacement cost less depreciation formula in this case produced a definitive figure of $179,550 for market value and since this formula seems to have been judicially approved by the Supreme Court for establishing market value in the case of an appeal from an assessment for tax purposes,[4] we believe it prudent to reduce the verdict of the jury from the cost-of-repair figure of $180,860 to the foregoing market value figure of $179,550. This figure is less than the cost of repairs.

This we do under the authority of GCR 1963, 820.1, subsection (7), which empowers us to enter any order and grant such relief as the case may

---

[4] See *In Re Twenty-Two Charlotte* v. *City of Detroit* (1940), 294 Mich 275.

require.   We refer also to this Court's precedent in *Tuuk* v. *Andersen* (1969), 21 Mich App 1, 11, holding:

> "The amount of the jury verdict will be reduced by $34,175  *  *  *  .  See 5 Am Jur 2d, Appeal and Error, Sec 940, pp 367–369, concerning the power of an appellate court to reduce the amount of a jury verdict where an excessive amount included therein *can be segregated.*"   (Emphasis supplied.)

We feel the amount of the deduction is segregable.

We add that the case has been most thoroughly briefed and ably argued. We commend both counsel.

The denial of the motion for judgment notwithstanding the verdict and the motion for a new trial are modified and affirmed.  The case is remanded to the trial court for entry of judgment on the verdict of the jury in the amount of $179,550.

No costs, neither party having prevailed in full.

All concurred.