## BARANOWSKI v STRATING

1. NEGLIGENCE—COURTS—FINDINGS OF FACT—SOIL BEARING TESTS—DUTY—DAMAGES—APPEAL AND ERROR.

A trial court's finding of negligence on the part of a defendant builder in failing to conduct soil bearing tests before construction of a house on plaintiffs' lakeside lot was not clearly erroneous where the defendants owed a duty to the plaintiffs to exercise due care in construction of the house and performance of the contract, and the plaintiffs suffered damage by the settlement of the house because it was built on unsuitable bearing soil.

2. NEGLIGENCE—BUILDING CONTRACTORS—REASONABLE MAN TEST—BUILDING CONSTRUCTION—SOIL TESTS—LAKESIDE LOTS.

A reasonably prudent builder constructing a house on a lakeside lot should conduct soil bearing tests to determine whether the soil would safely hold the house contracted for where it was common knowledge in the community that land fronting on inland lakes often contains unsuitable bearing soil which could only be revealed by soil bearing tests.

3. NEGLIGENCE—BUILDING CONTRACTORS—STANDARD OF CARE—SOIL TESTS—CUSTOMARY PRACTICES.

The fact that it is not a customary practice of building contractors in an area to conduct soil bearing tests does not necessarily mean that a builder would never be required to conduct such tests in order to meet the builders' standard of due care.

4. EVIDENCE—NEGLIGENCE—BUILDING CONTRACTORS—BUILDING CODES—OTHER EVIDENCE—APPEAL AND ERROR.

The admission into evidence in a negligence action against building contractors of an unadopted building code was not reversi-

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 5] 13 Am Jur 2d, Building and Construction Contracts § 64.
[4] 29 Am Jur 2d, Evidence § 442.
[6] 13 Am Jur 2d, Building and Construction Contracts § 28.
[7] 59 Am Jur 2d, Partnership § 69.
[8] 18 Am Jur 2d, Corporations § 493.
[9] 22 Am Jur 2d, Damages § 132.

ble error where there was sufficient competent evidence apart from the building code to support the trial court's determination.

5. PRINCIPAL AND AGENT—NEGLIGENCE—CONTRACTS—DISCLOSURE.

The agent of a corporation which entered into a building contract is personally liable for negligence in which he actively participates while performing the contract.

6. PRINCIPAL AND AGENT—CORPORATIONS—CONTRACT—NEGLIGENCE—DISCLOSURE.

An agent or officer of a corporation who enters into a contract on behalf of the corporation with a third party who is not aware of the existence of the corporation is personally liable on the contract.

7. PARTNERSHIP—ESTOPPEL—NEGLIGENCE—CONTRACT—RELIANCE.

The theory of partnership by estoppel is applicable where a negligence cause of action arises out of contract and one has relied upon the competency of apparent partners in entering into the contract.

8. PRINCIPAL AND AGENT—CORPORATIONS—STOCKHOLDERS—NEGLIGENCE—KNOWLEDGE—FAILURE TO OBJECT.

A corporate agent stockholder may be liable for the negligent conduct of other corporate agents where he either knows or should know of a failure to exercise due care and fails to object to or take steps to prevent it.

9. NEGLIGENCE—DAMAGES—PROPER MEASURE—REAL PROPERTY—DIMINUTION IN VALUE—COST OF REPAIR.

The measure of damages to real property in a negligence suit where the damage cannot be repaired is the difference between the market value of the property before and after the injury; where the damage can be repaired and the cost of repair is less than the value of the property prior to the injury, cost of repair is the proper measure.

Appeal from Kent, Roman J. Snow, J. Submitted October 7, 1976, at Grand Rapids. (Docket No. 25525.) Decided December 2, 1976. Leave to appeal applied for.

Complaint by Walter E. Baranowski and Sophia M. Baranowski against Roland L. Strating and Wayne Brower, doing business as Strating &

Brower Builders, for damages for breach of a building contract and for damages resulting from the negligent construction of a house. Judgment for plaintiffs. Defendants appeal. Affirmed.

*White, Smitter, Zimmerman & Walters,* for plaintiffs.

*Bergstrom, Slykhouse & Shaw, P. C.* (by *Robert G. Quinn, Jr.),* for defendants.

Before: R. B. BURNS, P. J., and D. E. HOLBROOK and T. M. BURNS, JJ.

T. M. BURNS, J. Plaintiffs' house was damaged due to settlement of the foundation. In this action plaintiffs sought to recover from the defendant builders, alleging breach of contract and negligence in the construction of the residence. Trial was held before Kent County Circuit Judge Roman J. Snow. In an opinion dated July 18, 1975, the trial court found the defendants guilty of negligence and awarded damages of $20,600. Defendants appeal from that judgment.

To set out the facts relevant to the issues raised on appeal we quote at length from Judge Snow's written opinion:

"On March 29, 1974, Plaintiffs Walter E. Baranowski and Sophia M. Baranowski, his wife, filed a complaint against Roland L. Strating and Wayne Brower, d/b/a Strating and Brower Builders, seeking in one count damages for breach of a building agreement for construction of a house by defendants for plaintiffs, claiming that defendants failed to conduct soil boring tests as required by the agreement; and in a second count the plaintiffs ask for damages based upon negligence of defendants in failing to conduct such tests prior to building their home; that as a result of the failure to conduct such tests the house settled and plaintiffs in-

curred damages. Defendants denied any liability to the plaintiffs in connection with the construction of the house and raised as an affirmative defense that the contract was entered into between plaintiffs and Strating and Brower Builders as a corporation and not these defendants as individuals.

"The proofs showed that on July 20, 1970, plaintiffs entered into an agreement with Melvin Jelsema to purchase a lot fronting Freska Lake for $9600. The agreement provided that the design of the house constructed on said lot had to be approved by Melvin Jelsema. Melvin Jelsema had platted this area in 1963, and had constructed 8 houses in the plat. The lot Jelsema sold to plaintiffs had been filled. Jelsema knew it had been filled prior to selling the lot to plaintiffs, but never disclosed to plaintiffs that the lot had been filled. Plaintiffs made no attempt to join Melvin Jelsema as a party-defendant.

"Plaintiffs had plans for the house prepared by Andrew Cnossen, an Architect, and then submitted the plans to Melvin Jelsema for his approval. Following this, plaintiffs submitted the plans to three different builders for bids. Strating and Brower Builders were low bidders. Plaintiff Walter Baranowski called Roland Strating and made an appointment with him to go over the plans. Plaintiffs met Roland Strating at 7768 22nd Street, Jenison, Michigan, where Roland Strating lived and also had his office. No representations were made by Roland Strating that Roland Strating and Wayne Brower were incorporated.

"On May 19, 1971, an agreement was entered into to construct a house for the plaintiffs for $29,010. The agreement read in part as follows:

" 'Strating & Brower, Builders
" 'BUILDING AGREEMENT

" 'THIS AGREEMENT, made this 19th day of May, 1971, by and between Strating & Brower Builders of Jenison, Michigan, hereinafter called the Builder, and Mr. and Mrs. Walter Baranowski of 2592 Rushpoint Dr., Sand Lake, Michigan hereinafter called the Owner.'

"The agreement was signed as follows:

" '*Strating & Brower* by
*Roland Strating*
Builder
" '*Walter E. Baranowski*
Owner
" '*Sophia M. Baranowski*
Owner

"On the same date the parties signed a specifications form which was designated 'STANDARD SPECIFICATIONS FORM DEVELOPED EXCLUSIVELY FOR AND BY THE MEMBERS OF THE MICHIGAN ASSOCIATION OF HOME BUILDERS'. The index sheet was entitled in part 'SPECIFICATIONS', and thereafter, 'new residence for

" 'Mr. & Mrs. Walter Baranowski
" '2592 Rush Point Dr.
" 'Sand Lake, Michigan'
"and at the bottom:
" 'Builder Strating & Brower Builders
7768 22nd Ave, Jenison, Michigan.'

"Page II entitled 'SITE WORK', provided in part as follows:

" 'C. EXCAVATING
" '1. Type Soil
" 'a) All excavations to be sufficient to place footings on suitable bearing soil. The Owner shall be immediately notified should any such condition not be possible.

" 'b) Backfilling will be sufficient to provide access for construction and grading such as to provide drainage away from buildings; remove all debris from excavation before backfilling.'

"The Specifications Agreement was signed:

" 'Walter E. Baranowski Owner
" 'Sophia M. Baranowski Owner'
"and thereunder:

" 'By Strating & Brower Bldg. Builder by Roland Strating'

"Roland Strating and Wayne Brower formed a partnership in 1964 for the purpose of building homes. The partnership was dissolved in 1969. On March 26, 1969, Roland Strating and Wayne Brower incorporated as

Strating & Brower Builders, Inc. They were in fact incorporated at the time the building agreement with plaintiffs was signed on May 19, 1971. Roland Strating and Wayne Brower were the sole stockholders. Roland Strating was President and Wayne Brower, Secretary. The corporation was subsequently dissolved on March 10, 1972. The building agreement form used by defendants was their old partnership building agreement form which did not contain the word 'Inc.'. Plaintiffs had never dealt with nor knew of defendants prior to entering into this agreement.

"Construction started shortly after the building agreement was signed. The house was constructed 150" from the edge of Freska Lake. Plaintiffs moved in October 15, 1971. Before plaintiffs moved in, there was cracking in the basement floors which defendants patched at the request of plaintiffs. Thereafter, the cracks reappeared in the same area and also in the foundation walls, brick work and plaster. The doors and windows in the house began to settle.

"Plaintiffs hired a soil expert to bore test holes at the four corners of plaintiffs' house. The test borings showed that the house was constructed on unsuitable bearing soil; that there was sand at the upper levels, and peat and muck at the lower levels.

"According to the testimony of Edward Prein, the Consulting Engineer, the house could have been piled when built at a cost of $15,000. The cost of supporting the house after it was built would be $50,000.

"In October of 1974 plaintiffs employed John Leach, an underground and foundation contractor, to build supports under the foundation. The contractor supported the southwest corner of the house through piling and underpinning at a cost of $5,508.20. This only partially corrected the problem.

"The township supervisor first examined the property in 1972 and placed a value thereon of $49,773 and with $8,900 thereof being placed on the lot. Following an appeal by the plaintiffs, the property was revalued at $43,000; and thereafter, at $40,600. In 1974, following an examination of the damage to the house caused by the settling, the house was reappraised at $20,000. There was no other testimony relating to value. This

would put the loss of plaintiffs at approximately $20,600, the difference in value of the house before and after the settling.

\* \* \*

"Plaintiffs further claim that defendants promise in their agreement that 'all excavation to be sufficient to place footings on suitable bearing soil' constituted an unconditional promise. Plaintiffs admit that defendants did not agree to take soil borings; that they could choose any techniques they wanted to verify suitable bearing soil; but that the appearance tests relied on by defendants were not reliable as soil borings, as soil borings are the only way to be sure of soil conditions. Plaintiffs claimed that defendants were negligent in not taking soil borings.

"There are three issues presented to the Court. The first issue is whether there is any liability to the plaintiffs by reason of the building agreement and specifications entered into. The second issue is whether there is any liability to the plaintiffs by reason of negligence. A third issue is if there is liability, who is liable?"

The trial court found that the defendants did not breach the building contract but were liable for negligence. The trial court found that the plaintiffs were entitled to damages measured by the difference in value of the house before and after the settling.

## I. Negligence.

Plaintiffs alleged that the defendants were negligent in not conducting soil boring tests before beginning construction. The trial court found that a reasonably careful contractor had a duty to be reasonably certain that the land upon which he intended to build a house contained suitable load bearing soil. The trial court based its finding of negligence on the following findings of fact:

1. Defendant Strating was an experienced builder while the plaintiffs knew little about building in general and soil conditions in particular.

2. While there was testimony that soil boring tests were not normally made in that area prior to constructing a house (nor were they required by the township), the reason why such tests were normally not made was because the quality of the soil in the area was known from personal experience. The nature of the land upon which plaintiffs' house was built was not known to the defendants.

3. Testimony (including that of defendant Brower) indicated that it was common knowledge that land fronting on inland lakes often contains muck, marl and peat. Brower testified that he had assumed that Strating had checked the soil since the property was on a lake.

4. Strating indicated concern about the nature of the soil by checking the percolation tests taken on nearby property and asking Mr. Baranowski if there was any fill in the area, but Strating did not make a sufficient attempt to discover whether there was a problem with the lot upon which the house was to be constructed.

5. A "Building Official Conference of America" building code which has been adopted by many municipalities requires that soil bearing tests be made unless there is satisfactory data from immediately adjacent areas.

6. Neither Strating nor Brower informed the plaintiffs of the choice or advisability of making soil bearing tests.

The trial court found, specifically, that the defendants' failure to suggest to the plaintiffs that soil bearing tests be made and to alert the plaintiffs to the tests and the choice of having them made constituted negligence and that this negli-

gence was a proximate cause of the damage to the house.

Defendants argue on appeal that they acted with reasonable and ordinary care in constructing the house; that the lot was not purchased or filled by them; that the land gave no evidence before or during construction that it was anything but what it appeared to be, solid, dry, sandy soil; and that they used due care according to the normal customs and usages of the home building trade in the area. Although not stated as such, the issues raised by the defendants concerning the finding of negligence are:

1. Whether the trial court erred in finding as a matter of fact that the defendants were negligent?

2. Whether the trial court erred reversibly in basing its finding of negligence in part upon a building code provision that was not put into evidence at trial and which was not in effect in the community in which plaintiffs' house was built?

On review of the record, we find that the trial court's finding of negligence was not clearly erroneous. GCR 1963, 517.1. Defendants owed a duty to the plaintiffs to exercise due care in construction of the house and performance of the contract. It is clear that the plaintiffs suffered damage by the settlement of their house because it was built on unsuitable bearing soil. The only question is whether the defendants' conduct met the standard of due care: that of a reasonably prudent builder under the same or similar circumstances. *Marietta v Cliff's Ridge, Inc,* 385 Mich 364; 189 NW2d 208 (1971), *Federoff v Meyer Weingarden & Sons, Inc,* 60 Mich App 382; 231 NW2d 417 (1975). More specifically, the issue is whether a reasonably prudent builder, under circumstances similar to those existing in this case, would have conducted soil

bearing tests to determine whether the soil would safely hold the house contracted for by the plaintiffs. Testimony indicated that it was common knowledge in the community that land fronting on inland lakes often contains material which renders the soil unsuitable for supporting buildings. Further testimony indicated that the only sure way to determine the suitability of the soil was to conduct soil bearing tests. Defendants certainly could have foreseen that the plaintiffs' land might contain unsuitable soil and that a house built on such soil would suffer damage. While relevant to the question, the customary practice of the defendants or of other building contractors in not conducting soil bearing tests does not necessarily satisfy their standard of care. *Jackson v Fox,* 69 Mich App 283; 244 NW2d 448 (1976), *Federoff v Meyer Weingarden & Sons, Inc, supra.* We find no error in the trial court's conclusion that defendant Strating was negligent.[1]

Defendants also assert that the trial court's finding of negligence must be reversed because the

---

[1] *See, Fireman's Insurance Co v Undermill,* 182 Cal App 2d 339; 6 Cal Rptr 469 (1960), *Sabella v Wisler,* 59 Cal 2d 21; 27 Cal Rptr 689; 377 P2d 889 (1963), *Kavalaris v Anthony Bros, Inc,* 217 Cal App 2d 737; 32 Cal Rptr 205; (1963), *Oakes v McCarthy Co,* 267 Cal App 2d 231; 73 Cal Rptr 127 (1968).

In *Fireman's Insurance Co v Undermill, supra,* the Court held that the defendant general contractor was liable in negligence for injuries caused by the settlement of a house built by him. The Court ruled that the defendant's duty to use reasonable care in the construction of the building included a reasonable examination of the soil condition where excavations were to be made.

In *Sabella v Wisler, supra,* the California Supreme Court held that a home builder was liable to the home buyer for negligence in constructing the dwelling on improperly compacted soil even though the appearance of the land was not such that a reasonably prudent person in his position would have been alerted to the existence of fill on the site.

In *Kavalaris v Anthony Bros, Inc, supra,* the Court held that a contractor who constructed a swimming pool on the owner's land had a common law duty to test the bearing quality of the ground underlying the pool.

court relied upon a model building code provision not adopted in the township in which the house was constructed.

Unadopted building codes have been held admissible in negligence suits in some jurisdictions,[2] but have been held to be inadmissible in Michigan. *Thompson v Essex Wire Co,* 27 Mich App 516; 183 NW2d 818 (1970). We need not decide whether we agree with that holding in *Thompson* or whether it is applicable to this case since we find, as did the panel in *Thompson,* that there is sufficient competent evidence apart from the building code to support the trial court's determination of negligence on the part of the defendants. *Thompson v Essex Wire Co, supra,* 536. Any error was harmless.

## II. LIABILITY.

Defendants next contend that the trial court erred reversibly in holding them personally liable.

The defendants had operated their construction business as a partnership until 1969, when they incorporated. The business was a corporation at the times the contract was entered into and the house was built. Defendants were the sole stockholders, Strating was president and Brower was secretary.

The trial court based its finding of personal liability on agency principles. In entering into the contract with the plaintiffs, Strating did not disclose his principal or act in the principal's name. No attempt was made by Strating to identify the business as a corporation or indicate that he was acting on behalf of anyone but himself. The agree-

---

[2] *See,* Annot., *Admissibility in Evidence, on Issue of Negligence, of Codes or Standards of Safety Issued or Sponsored by Governmental Body or by Voluntary Association,* 58 ALR3d 148 (1974).

ment was written on the old partnership form identifying the business as "Strating & Brower, Builders" without the word "Incorporated" or the abbreviation "Inc.". The parties met at Strating's home, in which he had an office. There was no sign indicating that the office was that of a corporation. Having acted in his own name without disclosing his agency, defendant Strating was thus personally liable.

Defendant Brower never signed the building agreement, but the trial court found that Brower was liable to the plaintiffs as a partner by estoppel under § 16 of the Uniform Partnership Act, MCLA 449.16; MSA 20.16. The building agreement represented that the defendants were in business together, Brower consented to the agreement in form and content, he consented to Strating's holding him out as an associate, and the plaintiffs relied upon these representations.

Regarding the liability of Strating, it is certainly true that where an agent or officer of a corporation enters into a contract with a third party on behalf of the corporation and the third party is not aware of the existence of the corporation and no disclosure of such is made to him, the agent is personally liable on the contract. *Stevens v Graf,* 358 Mich 122; 99 NW2d 356 (1959), *Harmon v Parker,* 193 Mich 542; 160 NW 380 (1916). See 19 CJS, Corporations, § 840, p 265. Had the trial court held that Strating breached the building contract by failing to construct the house on suitable soil as he had promised, this agency theory of liability would clearly have been applicable. We need not decide whether this agency principle applies where the agent is held liable for negligent breach of a duty arising from a contractual relationship. Nor need we decide whether defendant

Strating's representative capacity was sufficiently
disclosed to the plaintiffs. Whether defendant
Strating was acting on his own behalf or as an
officer or agent of the corporation, he is personally
liable for torts in which he actively participated,
*Warren Tool Co v Stephenson,* 11 Mich App 274,
300; 161 NW2d 133 (1968), *Allen v Morris Bldg Co,*
360 Mich 214; 103 NW2d 491 (1960), including
negligence, *Wines v Crosby & Co,* 169 Mich 210;
135 NW 96 (1912). See 19 CJS, Corporations, § 845,
pp 271–273, 19 Am Jur 2d, Corporations, § 1388,
pp 784–785. In light of the relationship between
the parties in this case and the duty created by
that relationship, application of this theory of
personal liability of the agent to third parties is
particularly appropriate.[3]

As for the trial court's finding of liability on the
part of defendant Brower, we likewise find no
reversible error, although the applicability of the
theory of liability employed is subject to debate.[4]

---

[3] *Cf. Bannigan v Woodbury,* 158 Mich 206; 122 NW 531 (1909) (duty
arising from particular status of agent-tortfeasor vis-a-vis third party:
agent in control of property liable to injured third parties for negli-
gent failure to keep premises in repair).

[4] There is authority for the conclusion of the trial court that
defendant Brower was liable to the plaintiffs as a partner of defend-
ant Strating by estoppel, even though Strating's liability rested in
tort. *Frye v Anderson,* 248 Minn 478; 80 NW2d 593 (1957).

While a good argument can be made for limiting the application of
the partnership by estoppel theory to tort causes of action in which
reliance is an element (as reliance on the "holding out" to the
detriment of the third party is an essential element of the partner-
ship by estoppel),* it has been held that where a negligence cause of
action arises out of contract and one has relied upon the competency
of apparent partners in entering into the contract, the theory of
partnership by estoppel is applicable. *Cook v Coleman,* 90 W Va 748;
111 SE 750 (1922). Although the same court has since held that a
nonpartner could not be held liable in tort under Uniform Partner-
ship Law, § 16, that holding was limited to "purely" tort actions in
which the third party was not injured as the result of any conduct on
the part of the person he is attempting to hold as a partner.

In the case at bar the trial court found a holding out of defendant
Brower as a partner, consent to the holding out on Brower's part,

Like Strating, Brower was an agent of the construction company and he participated, albeit to a lesser degree, in the negligent activity. The trial court found that Brower was associated with Strating in the construction business, including the construction of plaintiffs' house, and that plaintiffs spoke with Brower several times concerning the building of the house after the signing of the agreement. There is also support in the record, therefore, for a finding that Brower is personally liable for his own negligence or that, as an agent of the corporation, Brower is liable for the negligence of defendant Strating for acquiescing in the negligent conduct when he either knew or should have known of it and for failing to object to or take steps to prevent the failure to exercise due care. See 19 CJS, Corporations, § 845, pp 272–273.

### III. DAMAGES.

Defendants argue that the trial court erred in measuring plaintiffs' damages by the diminution in value of the property ($20,600) rather than cost of repair actually incurred ($5,508.20), as there was no specific finding made by the trial court that the injury was irreparable and since there was testimony that the injury was in fact reparable. Plaintiffs argue that testimony indicated that it would cost $50,000 to shore up the house at its proper level and insure stability; since the total cost of repair would be substantially higher than the original value of the house, cost of repair is not the proper measure of damages.

It is clear from the trial court's opinion that he

---

participation in the relationship by Brower, and reliance on the holding out on the part of the plaintiffs.

* *See, Note,* 55 Mich L Rev 1190 (1957).

relied upon the testimony of Edward Prein that the cost of repair of the house would be $50,000. Relying upon the valuation of the property made by the township supervisor the trial court found that the lowest value of the house prior to the injury was $40,600 and that its value after the injury was $20,000. Since the cost of restoration exceeded the value of the property, damages were assessed at the lower figure of diminution in value.

Although not so phrased by defendants, two issues arise concerning the trial court's assessment of damages: whether the trial court properly measured cost of repair and whether the trial court properly employed the diminution in value standard.

It should be noted that there is and should be no fixed rule for measuring compensation in cases such as this.[5] But it is generally recognized that damages for injury to real property are measured by one of two standards—diminution in value or reasonable cost of restoration or repair. Dobbs, Remedies, § 5.1, pp 312–318. The rule followed in Michigan employs a combination of these two measures and is best stated in *Bayley Products, Inc v American Plastic Products Co,* 30 Mich App 590; 186 NW2d 813 (1971): the measure of damages to real property in a negligence suit where the damage cannot be repaired is the difference between the market value of the property before and after the injury; where the damage can be repaired and the cost of repair is less than the value of the property prior to the injury, cost of repair is the proper measure.[6]

---

[5] "Definite rules which will measure the extent of recovery in all cases, even of a particular class, are difficult to formulate owing to the considerations which must be given in each case to its specific and perhaps peculiar surrounding circumstances." 9 MLP, Damages, § 101, p 92. *See Schankin v Buskirk,* 354 Mich 490, 494; 93 NW2d 293 (1958), Dobbs, Remedies, § 5.1, p 311; 25 CJS, Damages, § 82, p 903.

[6] *State Highway Commissioner v Predmore,* 341 Mich 639; 68

The trial court properly found that the cost of restoration or repair was that which would place the house on secure footing. Under the facts of this case, the measure of cost of repair is not, as contended by the defendants, that which was actually expended to partially cure the harm, but what expense would be necessary to put the house in the condition it would have been in had defendants not breached the duty they owed to the plaintiffs.[7]

Since the cost of repair exceeded the value of the property prior to the injury, the trial court properly assessed damages at the diminution in value of the property.

Affirmed.

NW2d 130 (1955), *Jackson County Road Commissioners v O'Leary,* 326 Mich 570; 40 NW2d 729 (1950), *O'Donnell v Oliver Iron Mining Co,* 273 Mich 27; 262 NW 728 (1935), *Tillson v Consumers Power Co,* 269 Mich 53; 256 NW 801 (1934).

Cf., *Wolverine Upholstery Co v Ammerman,* 1 Mich App 235; 135 NW2d 572 (1965) [breach of covenant to repair by landlord], *Mellios v Charney,* 350 Mich 199; 86 NW2d 266 (1957) [breach of covenant to repair by tenant], *Otto Misch Co v E E Davis Co,* 241 Mich 285; 217 NW 38 (1928) [breach of building contract], *Gutov v Clark,* 190 Mich 381; 157 NW 49 (1916) [breach of building contract].

[7] *See Jackson County Road Commissioners v O'Leary, supra,* note 6, *O'Donnell v Oliver Iron Mining Co, supra,* note 6, *O'Donnell v Oliver Iron Mining Co,* 262 Mich 470, 477; 247 NW 720 (1933).

Cf., *Otto Misch Co v E E Davis Co, supra,* note 6.